JACKSON, *ex dem.* VAN RENSSELAER, *against* ANDREW.

THIS was an action of ejectment, tried at the *Herkimer* circuit, in *June*, 1819, before Mr. Justice *Yates.* The defendant held, under a lease for lives, from *Philip Schuyler,* dated the 6th of *September*, 1790. The lessor reserved, among other things, all mines, and " all creeks, kills, streams and runs of water, and as much ground, within the premises, which he might think requisite to appropriate, at any time thereafter, to the erection of mills, mill-dams, and any works and buildings whatsoever for the convenient working of the mines, or for the use of the mills ; and, also, lands that may, by such dams, be overflowed with water, and also such wood, firewood and timber, &c. It was conditioned on the part of the lessee, that he, or his executors, &c. should not, at any time thereafter, erect, or permit, or cause to be erected, any mill or mill-dam, or any other work or building whatsoever, upon any kill, creek, stream, or run of water within the premises ; and that neither he, or they, should, at any time thereafter, commit any waste." And it was expressly covenanted and agreed, that in case the lessee, &c. did not perform, &c. all the covenants and conditions in the lease, on his part to be performed, &c. it should be lawful for the lessor, his heirs, &c. to re-enter, &c.

The lessor of the plaintiff was the assignee of the reversion. It was proved, that the defendant, about 17 years before the trial, caused a ditch about six feet wide, and about four deep, to be dug for the distance of about twenty rods, and made a dam across the creek, communicating with the *Mohawk* river, by which means it was diverted from its ancient channel, and more water thereby flowed into a swamp, which had been previously covered with timber. When the defendant first took possession of the farm, it was wild land, and he cleared all of it, except this swamp, in which there was large timber growing, and which was the only timber reserved on the farm. The timber, afterwards, died,

*Marginal note:* If a tenant does an act, proper in itself, he cannot be made a wrong doer, by a consequence which he could not anticipate. As if, by turning the water of a creek, being an act of good husbandry, by causing the water to flow into a swamp, the timber growing there is killed, it will not be deemed *waste*, so as to produce a forfeiture of a lease; especially, when the landlord has lain by for twenty years, during which time, new trees had grown up, of more value than the old, and, therefore, no permanent injury had been done to the inheritance.

owing, as some of the witnesses believed, to letting in more water from the creek upon the swamp, by means of the ditch dug by the defendant. Other witnesses thought that the decay was owing to the blowing down of trees, &c. There was a difference of opinion among the witnesses, as to the effect of the water flowing into the swamp, on the timber. It appeared, also, that after the old timber had decayed, new trees, of a different and better kind, had grown up, which, in a few years, would be more valuable, as timber, than the old. The lot leased to the defendant contained about 110 acres, and the swamp, which was the only woodland reserved, contained about 25 acres, which is about the usual proportion of wood and timber, on farms of that size, in that part of the country. Some of the witnesses thought the young timber, in its present state, was worth more than the old timber before it decayed. It was proved, also, that a number of years ago, the defendant had made a brick yard on the premises, and made brick, for which purpose the clay had been dug out of the meadows on the premises, but, after making a few thousand bricks, the defendant desisted, not finding it to answer his purpose.

The judge charged the jury, that there did not appear to be sufficient evidence to show, that the decay of the timber had been caused by the defendant's turning the course of the creek; but if that were the case, it was of no consequence, as it clearly appeared, that the growth of new timber was more valuable to the lessor than the old, and that it was a benefit, rather than an injury to the farm; and that what the defendant had done, in this respect, ought not to be deemed a breach of the covenant in the lease. That the attempt to make brick, was a matter too insignificant to constitute waste, for it could produce no essential injury to the inheritance. The jury found a verdict for the defendant.

A motion was made to set aside the verdict, and for a new trial.

*Talcot*, for the plaintiff, contended, that the digging the new channel for the creek, even if it had not been the cause of the decay of the timber, was waste; for, digging up the soil, for any purpose, except that of cultivation, is waste.

(*Co. Litt.* 53. b. 2 *Roll. Abr.* 816. *Owen*, 66.) So, turning the creek across the meadow, is waste. Suffering a wall of the sea to be in decay, so that, by the flowing of the sea, the meadow or marsh is surrounded, and rendered unprofitable, is waste. (*Co. Litt.* 53. b.) So, turning arable into wood land, or *e converso*, or meadow into arable, whereby the course of husbandry is changed, is waste. (*Co. Litt. ubi supra. Hob. Rep.* 234.) Again; erecting a dam across the creek, was a breach of the express covenant in the lease, not to build, or erect any mill, mill-dam, or *any other work or building* whatever. The terms, other " work or building," will include this dam. (16 *Johns. Rep.* 14. 22.)

. Again; the neglect to preserve sufficient wood and timber for the uses of the farm, was waste. (7 *Johns. Rep.* 227. . 233.) It makes no difference that the new growth of timber was better than the old. The question of waste does not depend upon that. The tenant has no right to take upon himself to judge what may be an improvement, or not, of the estate of the reversioner. He must be confined to the conditions of his lease. (*Dyer*, 65. *a. Cro. Jac.* 182. 1 *Lev.* 309.) Besides, the young trees now growing, are not, at this time, of any value. They are not timber, nor are they fit for fuel, or any of the uses of the farm.

*Gold* and *Sill*, contra. The creek, the water of which the defendant turned, was not a mill-stream, nor could it be used for any purpose but that of irrigation. Waste is an act done to the injury of the freehold. (7 *Johns. Rep.* 732.) It must be a permanent injury to the reversioner. Now, turning the water of this creek, in the manner it was done by the defendant, was not such an injury. It was necessary to be done for the proper cultivation of the farm. As to the alleged consequence of turning the stream, the killing of the timber in the swamp, the jury have passed upon it, and their verdict negatives the assertion. So, whether sufficient timber was left by the defendant, for the use of the farm, according to the regular course of husbandry, has been decided by the jury. If a tenant manages his farm in the manner practised by his neighbours, and without any

malice, or intent to injure his landlord, the Court will not be disposed rigidly to enforce a forfeiture of his lease. Again ; the lessor's reserving sufficient timber to build mills, &c. seems inconsistent with the defendant's reserving timber for the uses of the farm. Until the landlord comes and demands the exercise of the right reserved to him, he has no right to complain. The doctrine of the law of *England*, that changing arable into meadow, &c. cannot, in reason or justice, be applied to a lease of new land in this country. It is indispensable, for the purposes of husbandry, to change the face of the land.

*Per Curiam.* This being a hard action, with a view to the forfeiture of the estate, there ought not to be a new trial, unless the jury were clearly misdirected as to the law. The Judge, on the trial, stated the fact to be doubtful, whether turning the creek had killed the timber ; and by a review of the evidence, he was fully justified in saying so. He added, also, that the fact was of no consequence, for the new growth was more valuable than the old, and so it had been no injury to the inheritance. This we deem to be correct, when applied to this case. In *Co. Lit.* (53. *a.*) the law is laid down, that " if the tenant do, or suffer waste to be done in houses, yet, if he repair them before action brought, there lieth no action of waste against him." If, then, the turning the creek produced waste, by the destruction of the timber, twenty years ago, and if the landlord lies by, until the inheritance is benefited by the act, it would be unreasonable to admit him to say, that there was a forfeiture by an act in which he had so long acquiesced, and by which, at the time he sought redress, he was, in truth, benefited. The same remark, in a good degree, applies to the digging the clay for brick ; the injury, if any, has long since ceased. It is true, that a tenant cannot, under the pretence of advantage to the reversioner, change the nature of buildings, and many cases show that such changes, though beneficial, would be waste. Indeed, we have little hesitation in saying, that the alteration of the creek, which was obviously an act of good husbandry, if the consequence had been the destruction of the timber in the swamp, would not be waste.

The tenant, in doing an act proper in itself, cannot be made a wrong doer, by a consequence which he could not anticipate, or foresee.

ALBANY,
January, 1821.

Motion for a new trial denied.