LOTT KEELER *v.* SAMUEL EASTMAN.

*(In Chancery.)*

The law considers those acts, which do a permanent injury to the inheritance, as waste.

The different situation of our country requires a different application of the rule from that which might be proper in England.

It is not in this state *waste* to cut down wood or timber so as to fit the land for cultivation, provided this does not damage the inheritance, and is conformable to the rules of good husbandry; and this, even though the wood or timber so cut may be sold, or consumed off of the premises.

THE orator's bill stated, in substance, that Seba Eastman, in October 1828, executed a lease of a certain farm, described in the bill, to the defendant and his wife, during their natural lives, and afterwards, in February 1832, conveyed his reversionary interest in the farm to the orator. The bill then alleged that the defendant had committed waste on the premises, and especially upon a sugar orchard, by cutting down and carrying away and selling the wood and timber growing thereon, and concluded with a prayer for an injunction to stay further waste, and that the defendant might be decreed to account to the orator for such as had been committed.

The substance and amount of the testimony will appear from the opinion of the court, delivered by

BENNETT, Chancellor.—The great subject of complaint seems to be the destruction of the sugar orchard, which it is alleged has been cut down and destroyed since the orator became possessed of the reversionary interest, in February 1832. It is unnecessary to go into the particulars of the evidence, which is quite voluminous, and is evidently somewhat contradictory; but suffice it to say that it seems to be pretty well established from the current of the testimony, that the principal part of the chopping in the sugar orchard was prior to the winter of 1832, and this too by Seba Eastman and Charles Eastman, while Seba had the reversionary interest. The whole evidence taken together satisfies the court that the farm, on the whole, has been managed by the tenant for life, in a prudent and husbandlike manner; and that there have been no acts of wantonness on the part of the defendant, or disregard to the ultimate value of the reversionary interest. Indeed, the value of the property seems to

have been enhanced by the betterments and good husbandry of the defendant. We are not aware of any decisions in the courts of this state, laying down any precise rules esta-. blishing what acts shall constitute *waste;* and, indeed, it is difficult there should be any. The general principle is that the law considers every thing to be *waste* which does a permanent injury to the *inheritance.* Coke Litt. 53, 54. Jacob's Law Dic. 6 Vol. 393, Tit. Waste. 6 Com. Dig. Tit. Waste.

By the principles of the ancient common law, many acts were held to constitute waste—such as the conversion of wood, meadow or pasture, into arable land, and of woodland into meadow or pasture land—to which we might not, at the present day, be disposed to give that effect. These principles must have been introduced when agriculture was little understood, and they are not founded in reason, and many of them are inconsistent with the most important improvements in the cultivation of the soil. In England that species of wood, which is designated as timber, shall not be cut, because the destruction of it is considered an injury done to the inheritance; and, therefore, *waste.* From the different state of many parts of our country a different rule should attain in our courts; and timber may and must, in some cases, to a certain extent, be cut down, but not so as to cause damage to the inheritance. To what extent a tenant for life can be justified in cutting wood, before he shall be guilty of *waste,* must depend upon a sound discretion applied to the particular case. It is not in this state *waste,* to cut down wood or timber, so as to fit the land for cultivation, provided this would not damage the inheritance, and would be according to the rules of good husbandry, taking into view the location and situation of the whole farm. So, to remove the dead and decaying trees, whether for the purpose of clearing the land, or giving the green timber a better opportunity to come to maturity, is not *waste.* We are satisfied that, when the wood or timber is cut with this intent, and is according to a judicious course of husbandry, the tenant is not guilty of waste, though the wood or timber so cut may have been sold, or consumed off of the farm. This farm, it is to be remembered, is comparatively in a state of nature, and the town in which it is situated comparatively

new; and what might constitute *waste*, as applied to one farm in one place, might not, when applied to another, in a different place.

Though the evidence is somewhat contradictory, we are not satisfied that the defendant has gone beyond his rights. The orator's bill is therefore dismissed. But inasmuch as the fendant has made declarations claiming the right to cut off all the wood and timber from the farm if he chose to do it, and threatened the doing of it, the bill was not brought without some apparent cause, and the defendant in this particular is not without fault; it is therefore, dismissed without costs.

*R. R. Thrall* and *E. N. Briggs*, for orator,

*E. L. Ormsbee,* for defendant,