JOHN E. DOOLY, RESPONDENT, v. SUSAN A. STRING-
HAM, APPELLANT.

SUCCESSION—WIDOW'S INTEREST IN HOMESTEAD.—Section 676 of the
    Compiled Laws of Utah territory gives the widow of an intestate
    a life interest in the homestead, with remainder over to the chil-
    ·dren of the deceased.
WASTE BY TENANT FOR LIFE—INJUNCTION.—It is waste in a tenant
    for life of real property to tear down a building thereon, although
    it is done with the intention of erecting a better one; and, when
    such waste is threatened, an injunction to prevent it is a  proper
    remedy.

APPEAL from a judgment of the district court of the
third district sustaining a demurrer to appellant's cross-
complaint, and from an order refusing to dissolve an in-
junction.   The opinion states the facts.

*Mr. Z. Snow*, for appellant, cited: Washburn on Real
Property, vol. 1, p. 430; Taylor's Landlord and Tenant, §
345; Washburn on Real Property, vol. 1, p. 108, sub. 3,
p. 113, sub. 23, 24, 25, pp. 114, 115, sub. 26, 27; *Winship*
v. *Pitts*, 3 Paige 259.

*Messrs. Hall & Marshall*, for respondent.

It has been decided in England to be waste to tear down
a house in order to build a better one out of the materials:
Kerr on Injunctions, pp. 250-1.

This doctrine seems to have been universally approved
in the United States: 57 N. Y. 614, *Agate* v. *Lowenbein;*
53 Am. Dec. 622, *Clemence* v. *Steere.*

In *U. S.* v. *Bostwick*, 94 U. S. 69, fences and walls were
torn down by the lessee, and the materials were used for
the making of sidewalks and the erection of other build-
ings, or carried away, and these acts were held to be
waste.

In *Coppinger* v. *Gubbin,* 9 Ir. Eq. 304, quoted in 1 High on Inj., § 660, it was held that equity would not refrain from enjoining a waste doer because of his assertion that he would improve the property after committing the waste.

Even in the case of *Winship* v. *Pitts,* 3 Paige 259, which is quoted by appellant as holding the advanced view in regard to waste that he invokes, the chancellor is careful to limit the modification of the common law rule in that case by requiring that no act should be done which would destroy or materially injure the building or improvements already existing on the land.

The jurisdiction in equity to prevent waste by injunction is well settled: 1 High. on Injunctions, §§ 649, 655.

And the remainder man of an undivided share of the inheritence may have an injunction against waste and an account therefor: Kerr on Injunctions, 257.

But as between co-parceners, joint tenants, or tenants in common, the court will not ordinarily interpose to restrain waste, unless there be some special circumstance to invoke the equity; that the wrong-doer is insolvent, or the waste amounts to destructive waste, is considered such a circumstance, and, either of them appearing, the injunction will issue: Kerr on Injunctions, 257-8; 1 High. on Injunctions, § 602.

Boreman, J.:

In 1871, Bryant Stringham died, owning a homestead consisting of two lots of ground in Salt Lake City, and leaving a widow, Susan A. Stringham, the appellant, and eight children. Some of the children are still minors, living with their mother. The widow and children were residing on the homestead at the death of the decedent, and she still so resides. In 1879, the probate court set off the homestead to the widow for life, and to her said children in fee. In 1883, four of the adult children sold and conveyed to the respondent all their interests, consisting of the undivided half of said homestead, in reversion. In 1884, the appellant began tearing down an adobe dwelling house situate on the homestead, with the professed object

of replacing the same with a better building, and alleging the adobe dwelling as unfit for use. The respondent sued out an injunction to restrain the widow from destroying the house then upon the lots. At the time of answering, the appellant filed a cross-complaint, alleging that respondent had no title or interest, and that his claim was a cloud upon her title, and she prayed that respondent might be enjoined from claiming any interest or title to said property, and she filed her motion also to dissolve the injunction granted in favor of respondent.

To the cross-complaint the respondent demurred, alleging, as ground of demurrer, that the cross-complaint did not state facts sufficient to constitute a cause of action. Upon the hearing of the motion and demurrer, the court overruled the motion to dissolve the injunction, and sustained the demurrer to the cross-complaint. From the order refusing to dissolve the injunction, and from the order sustaining the demurrer to the cross-complaint, the appellant has brought the case to this court.

The appellant claims the absolute fee-simple title to the lots, and that, if she be not entitled to that, but only has a life estate, yet that she has a right to tear down the building.

At the time of the death of Bryant Stringham, the statutes incorporated into the "Compiled Laws" as bracket sections 666 and 676 were in force. The first of these sections reads as follows:

"666. Section 14. When the deceased leaves a wife or family, no property exempt by law from execution shall be considered assets, or administered upon, but shall be held for the exclusive benefit of the wife or family, and shall not be liable for any debts against the estate.

And the other section reads as follows:

"676. Section 24. The homestead occupied by the wife, or any portion of the family of the deceased, at the time of his death, shall, in all cases, be held free to the use of the wife and family of the deceased, and shall not be liable to any claim, or claims, against said estate, and, if there be other property remaining, after the liabilities of the estate are liquidated, then it shall, in the absence of

other arrangements by will, descend in equal shares to his children, or their heirs, one share to such heirs through the mother of such children, if she shall survive him, during her natural life, or during her widowhood; or, if he has had more than one wife, who either died or survived in lawful wedlock, it shall be equally divided between the living and the heirs of those who are dead, such heirs taking by right of representation."

If the two sections were held to be in conflict, the latter would take precedence, as it is specific, and the prior one is general in character. But we are unable to see wherein there is any conflict, so far as the question in dispute is concerned. The prior of the two sections, if strictly construed, would probably be held to mean that, when a man dies, leaving a wife and no children, the exempt property should go to the wife absolutely, and, if he dies leaving no wife, yet leaves a family, the exempt property should go to them absolutely, and that it made no provision for the case of a man leaving both wife and children. Yet we are not inclined to this strict construction, but think a more favorable view should be taken of the section. The whole of the act of March 3, 1852, from which these two sections were taken, is crude and indefinite. In another section of the same act, and now found in the "Compiled Laws," bracket section 678, it is provided that "in all cases where the deceased leaves a wife, the inheritance shall not pass therefrom so long as the name of the dead shall be perpetuated thereon." This section, if it means anything, provides that the wife shall be allowed to retain some "inheritance" as long as she remained a widow, and the word "inheritance," in this connection, would apply more appropriately to the homestead than to anything else. The appellant is a widow, and hence, under these sections, 666 and 678, has a present estate and interest in the lots, if section 666 be held to apply to real estate. Section 666, 676 and 678, should be construed together, and be made to stand, if possible. There seems to be no way to enable them to stand together, except by this liberal construction we put upon them, and thus construing section 666 with reference to the others, it is evident that the legislature

did not intend, in that section 666, to leave unprovided for the case of a man at death leaving both a wife and family, but that the property was for the benefit of both wife and family, and the same might be held accordingly, unless some other section provided otherwise in regard to some particular part of the exempt property. Another section, 676, does make provision for the disposition of so much of the exempt property as is embraced under the head of homestead. Then the only remaining exempt property is personal property, and it follows that section 666 applies only to personal property, and section 676 applies to real estate. By this construction all of these sections stand, and do so without any forced construction of the language, and section 676 alone controls the disposition of the homestead. This last section provides that the homestead (it is exempt from execution) shall not be liable for the debts of the deceased; but shall be held for the use of the wife and family of the deceased. So long as his family should exist as a family, the homestead was to remain as a homestead. When his family should cease to exist as such, no provision is made for a longer continuance of the homestead, and it would naturally pass, as other property, to the heirs of the deceased upon the death of the widow, and when the children had reached their majority, and scattered off, making homes for themselves. The latter part of section 676 has no bearing upon the question at issue, as it provides for the disposition of "other property" than the exempted property. Nor does the fact that the government title had not been obtained, at the death of the decedent, become material in this case, as the statute applied to possessory rights as well as to title in fee.

The widow, having had a life estate set off to her, and being in possession of the homestead, with reversion in the heirs, the question arises, had she the right to tear down the dwelling house? She had no right to commit waste.

Waste is substantial damage to the reversion, done by one having an estate of freehold or for years, during the continuance of the estate: Adams' Equity, side page 208.

The affidavits show the building to be of value. Its destruction would, therefore, be "substantial damage" to the reversion. Whether appellant would ever replace it with a better, or as good a building, or any building, is beyond our province to inquire. It might become an impossibility, no matter how willing appellant might be.

Is injunction the proper remedy? It is no unusual exercise of the writ to enjoin waste, and is a proper remedy: 1 High on Injunction, secs. 649, 655; 2 Pomeroy Equity Juris., secs. 917, 919; 3 Pomeroy Equity Juris., sec. 1348.

It is a proper remedy even when the title is in dispute: *Erhardt* v. *Boaro*, 113 U. S. 537.

Let both orders of the court below be affirmed.

ZANE, C. J., and POWERS, J. concurred.