New York, Ontario and Western Railway Company, Appellant, *v.* Charles V. Livingston, Respondent.

**Eminent domain — condemnation proceedings — railroads — entry upon land under color of title — error to include value of improvements in award thereafter made in proceedings to condemn hostile right — when act of life tenant, though technically waste, adds to value of remainder, equities that would otherwise be available for protection of occupant not destroyed.**

1. A railroad company or other public agency, which enters lawfully upon land and improves it in good faith, may exclude the value of the improvements in proceedings brought thereafter to condemn a hostile right.

2. Where a railroad company entered upon land under a deed to it which made it the owner thereof for the life of its grantor and which

gave support to a reasonable though mistaken belief that it was the owner of the fee, it is error, in proceedings instituted by it after the death of its grantor to acquire title to the fee, to include in the award the value of improvements made by the railroad while its grantor, the life tenant, was yet in being.

3. The act of turning a farm into a railroad yard, if waste, was at the utmost meliorating waste, where its effect was to add to the value of the inheritance, and a wrong so technical does not destroy the equities that would otherwise be available for the protection of the occupant, at all events in a case where to the ownership of a life estate there is added color of lawful claim to the ownership of the fee. (*Philadelphia, R. & N. E. R. R. Co.* v. *Bowman*, 23 App. Div. 170; 163 N. Y. 572, distinguished.)

*N. Y., O. & W. Ry. Co.* v. *Livingston*, 206 App. Div. 589, modified.

(Argued March 31, 1924; decided June 3, 1924.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered November 23, 1923, which affirmed a final order of Special Term confirming the report of commissioners in condemnation proceedings.

*A. T. Clearwater* and *C. L. Andrus* for appellant. The award by the commissioners of $49,000 as an enhanced value of the land sought to be condemned by reason of the railroad structures erected thereon by plaintiff was unwarranted by law, and the final order confirming such award erroneous. (*Matter of Norwood* v. *Montreal R. R. Co.*, 47 Hun, 489; *McNair* v. *R., N. Y. & P. R. R. Co.*, 38 N. Y. S. R. 271; *Matter of Trustees of Village of White Plains*, 124 App. Div. 1; *Village of St. Johnsville* v. *Smith*, 184 N. Y. 341; *Matter of City of New York*, 198 N. Y. 84; *P., R. & E. R. R. Co.* v. *Bowman*, 23 App. Div. 170; 163 N. Y. 572; *Christie* v. *Gage*, 71 N. Y. 189; *Williams* v. *Alt*, 186 App. Div. 235; 226 N Y. 283; *Thompson* v. *Simpson*, 128 N. Y. 270.)

*Howard Chipp* for respondent. This proceeding was brought to acquire the title to land and the superstructures thereon consisting of buildings and railroad equip-

ment and was not a proceeding to cure a defective title. A proceeding authorized by the Railroad Law to be instituted to cure an invalid or defective title, when brought would nevertheless require full compensation to be made for that which is taken in the proceeding. No different rule of damages or standard of compensation is to be applied under a proceeding so authorized than would be applicable in any condemnation proceeding. Defendant is entitled to full compensation for that which is taken and which has been adjudged to belong to him. (*Matter of N. Y. C. R. R. Co.*, 20 Barb. 419; *Watson* v. *N. Y. C. R. R. Co.*, 47 N. Y. 157; *Livingston* v. *N. Y., O. & W. Ry. Co.*, 193 App. Div. 529.) It is conceded the structures are being acquired in this proceeding. They belong to the defendant Livingston, his title thereto being conclusively established by the judgment in ejectment. He is entitled to payment for them as an enhancement to the value of the soil. (Warvelle on Ejectment, 603, § 546; *Van Size* v. *Long Island R. R. Co.*, 3 Hun, 613; Washb. on Real Prop. § 46; *N. Y., O. & W. Ry. Co.* v. *Western Union Tel. Co.*, 36 Hun, 205; *Mott* v. *Palmer*, 1 N. Y. 569, 572; *Phil. R. Co.* v. *Bowman*, 23 App. Div. 170.) These structures enhanced the value of the land, as they were adaptable and available to the proper use of the land and were specially available as they were peculiarly adapted to the purposes of the condemnor. The defendant Livingston is entitled to receive such enhanced value and the commissioners were justified in receiving evidence of such enhanced value. The cost of reproduction, after deducting depreciation, was the proper and only available method of showing the valuation of the structures. (*Matter of City of New York*, 198 N. Y. 84; *Matter of N. Y., L. & W. R. R. Co.*, 27 Hun, 116; *Matter of Long Island R. R. Co.*, 6 T. & C. 298; *Matter of Gilroy*, 85 Hun, 424; *Syracuse* v. *Stacy*, 45 App. Div. 244; 169 N. Y. 231; *Matter of N. Y., W. & B. R. Co.*, 151 App. Div. 50; *Matter of Simmons*, 158 App. Div. 206; *Matter*

*of Second & Third Sts.*, 98 Misc. Rep. 716; *Matter of N. Y., W. S. & B. R. Co.*, 37 Hun, 317; *Boom* v. *Patterson,* 98 U. S. 403; *San Diego* v. *Neale,* 78 Cal. 63.)

Cardozo, J.   Edward Livingston, who died in 1864, devised to his nephew Charles Octavius Livingston a farm of two hundred acres at Livingston Manor, Sullivan county, New York, " said farm and its appurtenances to be used and enjoyed by my said nephew during the term of his natural life, and at his decease to descend to the eldest son of my said nephew who shall then be living; and if my said nephew shall die leaving no son, then the said farm shall descend to the daughters of my said nephew, who shall then be living, and the issue of such daughters as may before that time have died," with a gift over to others in other contingencies.   He enjoined upon his " nephews and such of their children who may at any time become possessed of the said farm under this will that they do not sell or in any manner part with the same," it being his " desire that the said farm with the appurtenances shall remain in the possession of " his " family, and that the same should not be sold or pass into the possession of strangers."

In 1871 the nephew, Charles Octavius Livingston, who by this will was at least a life tenant, and who claimed the fee, conveyed the farm to one Morss, and his heirs and assigns forever, covenanting that " the children and descendants of the party of the first part, each and every of them, shall be forever estopped and barred from claiming any title, estate or interest in the said lands or any portion thereof." In 1872 the New York and Oswego Midland Railroad Company constructed its railroad upon and over the farm under an agreement with Morss for the conveyance of a right of way. In 1880 Morss, pursuant to this agreement, executed a conveyance in fee, with covenant of warranty, to the appellant, the New York, Ontario and Western Railroad Company, the

successor in interest of the New York and Oswego Midland Railroad Company. Other portions of the farm were purchased later. Upon the land so acquired the railroad company built a passenger station, a freight house and other structures as well as tracks and sidings.

. The life tenant, Charles Octavius Livingston, died in 1914, survived by the respondent Charles Victor Livingston, his eldest son. The latter made claim against the railroad company to the ownership of the land, and in 1917 began an action of ejectment to recover the possession. The railroad company answered that it was the owner of the fee, but judgment went against it after a trial of the issues and an appeal (193 App. Div. 523). This proceeding was then begun, in April, 1921, under section 17 of the Railroad Law (Cons. Laws, ch. 49), to acquire title to the land as necessary for a public use in the exercise of the power of eminent domain. The commissioners' report, which was confirmed by the court, fixed the value of the land without the improvements at $15,000, and the value of the improvements at $49,000, a total of $64,000. This total the appellant has been required to pay as the price of condemnation. The question is whether there was error in including the value of improvements.

We think a railroad company or other public agency which enters lawfully upon land and improves it in good faith, may exclude the value of the improvements in proceedings brought thereafter to condemn a hostile right (*Searl* v. *School District, Lake County,* 133 U. S. 553, 561, 562; *Chicago, Peoria & St. Louis R. R. Co.* v. *Vaughn,* 206 Ill. 234, 247; *St. J. & L. C. R. R. Co.* v. *Willard,* 61 Vt. 134; *Norfolk & O. V. Ry. Co.* v. *Consol. Turnpike Co.,* 111 Va. 131, 141, 142; affd., 228 U. S. 596, 602; *U. S.* v. *Smith,* 110 Fed. Rep. 338; *Bear Gulch Placer Mining Co.* v. *Walsh,* 198 Fed. Rep. 351; 2 Lewis on Eminent Domain, § 507). Some courts go farther and concede a like privilege though the entry in its inception was unlawful, if only the trespasser acted innocently, under a mistaken claim of title (*Searl* v.

*School District, Lake County, supra; Cohen* v. *St. Louis, etc., R. R. Co.,* 34 Kan. 158; *Albion River R. R. Co.* v. *Hesser,* 84 Cal. 435, overruling 47 Cal. 515). How we should rule in such circumstances we need not now determine. Other courts go even farther, and concede a like privilege even to the willful wrongdoer (*Justice* v. *N. V. R. R. Co.,* 87 Penn. St. 28; *Jones* v. *New Orleans & S. R. R. Co.,* 70 Ala. 227; Lewis on Eminent Domain, *supra*). By our decision in *Village of St. Johnsville* v. *Smith* (184 N. Y. 341) we refused to place upon lawlessness a premium so tempting. There a village without color of right, and in advance of the initiation of any proceeding to condemn, had made an entry upon land in defiance of the express command and remonstrance of the owner (184 N. Y. at p. 344). We held that the price was not subject to abatement, but we did not fail to observe that equities exacting a different conclusion might flow from an entry that was lawful in its origin (184 N. Y. at p. 349). As authorities supporting the rule applicable to wrongdoers, we cited *Matter of New York, West Shore & Buffalo Ry. Co.* (37 Hun, 317) and *Matter of Long Island R. R. Co.* (6 T. & C. 298), where a naked or willful trespass was again the decisive feature. On the other hand, in this state as elsewhere, the rigor of the rule enforced against the willful wrongdoer has been tempered to relieve the occupant who has entered innocently and lawfully (*Matter of Norwood & M. R. R. Co.,* 47 Hun, 489; *McNair* v. *Rochester, N. Y. & Pa. R. R. Co.,* 38 N. Y. St. Rep. 271; cf. *Matter of City of New York,* 198 N. Y. 84, 89). In such circumstances, " just compensation " does not exact the addition of the value of the improvements to the value of the land. The maxim *quicquid plantatur solo, solo cedit,* " has always had exceptions, and they increase with the ever varying necessities and exigencies of society " (*St. J. & L. C. R. R. Co.* v. *Willard, supra,* at p. 138; *Consol. Turnpike Co.* v. *Norfolk & O. V. Ry. Co.,* 228 U. S. 596, 602). Commis-

sioners in these proceedings are to ascertain and determine the compensation which ought " justly " to be made by the public or its delegate to the owners of the property (Condemnation Law [Consol. Laws, ch. 73], § 14; cf. N. Y. Constitution, art. I, § 6). " It is the duty of the State, in the conduct of the inquest by which the compensation is ascertained, to see that it is just, not merely to the individual whose property is taken, but to the public which is to pay for it " (*Searl* v. *School District, Lake County,* 133 U. S. at pp. 553, 562). No formula will be adequate unless its breadth of view and flexibility of adaptation are fitted and proportioned to the scheme and purpose of the inquest. The problem is one of justice between the individual proprietor on the one hand and on the other hand the sovereign or the representative of sovereign power.

When the test of these principles is applied to the case before us, the conclusion is hardly doubtful. The railroad company was not a willful trespasser when it entered upon this farm and placed improvements thereon. It was not a trespasser at all. It was the owner of an estate for the life of Livingston, the grantor, and it held a deed which gave support to a reasonable, though mistaken, belief that it was the owner of the fee. The life tenant had covenanted that his children and descendants were barred and estopped from assailing the validity of the grant; and the assumption was not a strained one that he knew whereof he spoke. In such circumstances, we cannot doubt that the value of the improvements would have been excluded if the railroad company had brought proceedings during the life estate to acquire the remainder. We think it is not a sufficient reason for applying a harsher rule that the proceedings were not begun till the particular estate had ended. The owner of the remainder has been compensated for the delay by the award of mesne profits during the period of detention (Civ. Prac. Act, § 1011). We find no basis for a holding that he is entitled to something more. The improvements had been

completed while the life tenant was yet in being, and the failure to yield possession at once upon his death would be penalized over-much if the increment of value were held to be forfeit altogether. The position of this railroad company as an actual tenant for life and a supposed owner in fee is very similar to that of the railroad company in a case in Illinois, where there was entry under the deed of a tenant for life, and allowance in condemnation proceedings for improvements placed upon the land (*Chicago, Peoria & St. Louis R. Co.* v. *Vaughn,* 206 Ill. 234, 247). The circumstances of this entry dictate a like conclusion.

We do not overlook the argument that a life tenant who turns a farm into a railroad yard commits an act of waste. The effect of the so-called waste in this instance was to add $49,000 to the value. The act, if waste at all (*Pynchon* v. *Stearns,* 11 Metc. 304, 310; *Melms* v. *Pabst Brewing Co.,* 104 Wis. 7; *Winship* v. *Pitts,* 3 Paige, 259; *Agate* v. *Lowenbein,* 57 N. Y. 604, 615), was at the utmost meliorating waste, improving instead of injuring the remainderman's inheritance (*Doherty* v. *Allman,* 3 App. Cas. 709). We think a wrong so technical does not destroy the equities that would otherwise be available for the protection of the occupant, at all events in a case where to the ownership of a life estate there is added color of lawful claim to the ownership of the fee.

Nothing inconsistent with our present ruling was held in *Philadelphia, R. & N. E. R. R. Co.* v. *Bowman* (23 App. Div. 170; 163 N. Y. 572). There the improvements were made upon land subject to a mortgage, and title had passed to a stranger who bought at the foreclosure sale in the belief that the improvements were covered by the deed. Just compensation is determined by " equitable principles " (*U. S.* v. *Rogers,* 257 Fed. Rep. 397, 400), and its measure varies with the facts.

The order of the Appellate Division and that of the

Special Term should be modified by deducting the sum of $49,000 from the payment of $64,000 therein directed to be made, and as modified affirmed, without costs to either party (Condemnation Law, § 20).

HISCOCK, Ch. J., POUND, CRANE and LEHMAN, JJ., concur; McLAUGHLIN and ANDREWS, JJ., dissent.

Ordered accordingly.