GEORGE TUTTLE BROKAW, Plaintiff, *v.* ELVIRA JULIANE FAIRCHILD and Others, Defendants.

Supreme Court, New York County, October 24, 1929.

*Reeves, Todd, Ely, Price & Beaty* [*Ambrose G. Todd* and *Harry J. Ahlheim*, of counsel], for the plaintiff.

*Stoddard & Mark* [*Yorke Allen* of counsel], for the defendants Howard Crosby Brokaw and others.

*Taylor, Blanc, Capron & Marsh* [*George S. Mittendorf* of counsel], for the defendant Farmers Loan and Trust Company, as trustee.

*Yorke Allen*, guardian *ad litem*, for infant defendants Lucile Brokaw and others.

*Joseph N. Tuttle*, guardian *ad litem*, for infant defendant Ann Clare Brokaw.

*John J. Curtin*, guardian *ad litem*, for infant defendants Margot McNair Fairchild and another.

HAMMER, J. This is an action under section 473 of the Civil Practice Act and rules 210 to 212 of the Rules of Civil Practice, in which plaintiff asks that it be declared and adjudged that the

plaintiff, upon giving such security as the court may direct, has the right, and is authorized to remove the present structures and improvements on or affecting the real property No. 1 East Seventy-ninth street, or any part thereof, except the party wall, and to erect new structures and improvements thereon in accordance with certain proposed plans and specifications.

Decision was reserved upon motions to dismiss. Having considered the evidence previously taken before another justice, which upon request and consent was accepted as part of the record herein, as well as the proof given before me, I am of the opinion that the court has jurisdiction, the plaintiff by his proof made out a *prima facie* case, and at the end of the entire case a question of fact was presented for determination. Accordingly, each of such motions is denied with except'ons to such rulings to each moving defendant.

In the year 1886 the late Isaac V. Brokaw bought for $199,000 a plot of ground in the borough of Manhattan, city of New York, opposite Central Park, having a frontage of 102 feet 2 nches on the easterly side of Fifth avenue and a depth of 150 feet on the northerly side of Seventy-ninth street. Opposite there is an entrance to the park and Seventy-ninth street is a wide crosstown street running through the park. Upon the corner portion, a plot of ground 51 feet 2 inches on Fifth avenue and a depth of 110 feet on Seventy-ninth street, Mr. Brokaw erected in the year 1887, for his own occupancy, a residence known as No. 1 East Seventy-ninth street, at a cost of over $300,000. That residence and corner plot is the subject-matter of this action. The residence, a three-story, mansard and basement granite front building, occupies the entire width of the lot. The mansard roof is of tile. On the first floor are two large drawing rooms on the Fifth avenue side and there are also a large hallway running through from south to north, a reception room, dining room and pantry. The dining room is paneled with carved wood. The hallway is in Italian marble and mosaic. There are murals and ceiling panels. There is a small elevator to the upper portion of the house. On the second floor are a large library, a large bedroom with bath on the Fifth avenue side and there are also four other bedrooms and baths. The third floor has bedrooms and baths. The fourth floor has servants' quarters, bath and storage rooms. The building has steam heat installed by the plaintiff, electric light and current, hardwood floors and all usual conveniences. It is an exceedingly fine house, in construction and general condition as fine as anything in New York. It is contended by plaintiff that the decorations are heavy, not of a type now required by similar residences,

and did not appeal to the people to whom it was endeavored to rent the building. (See Stenographer's minutes, 79, 130, 131, 132 and 133.) (Stenographer's minutes, 33): It is " a masonry house of the old-fashioned type with very thick walls and heavy reveals in the windows, very high ceilings, monumental staircase and large rooms;" (Stenographer's minutes, 53): "such as has not been built for probably twenty-five years." (Stenographer's minutes, 54): " Utterly impractical to remodel for occupancy by more than one family." It " was offered to a great many people for rental at $25,000 with the statement that a lower figure might be considered and no offer of rental was obtained. (Stenographer's minutes, 27.) Mr. Brokaw [the plaintiff] directed that the asking rental be $30,000 to start and finally reduced to $20,000. There is no demand for rental of private houses. There is a sporadic demand for purchase and sale on Fifth Avenue for use as private homes. Once in a while somebody will want a private house." The taxes are $16,881; upkeep for repairs, $750, and watchman, $300. The taxes for 1913 were $8,950.77. (Stenographer's minutes, 92.)

Since 1913, the year of the death of Isaac V. Brokaw and the commencement of the life estate of plaintiff, there has been a change of circumstances and conditions in connection with Fifth avenue properties. Apartments were erected with great rapidity and the building of private residences has practically ceased. Forty-four apartments and only two private residences have been erected on Fifth avenue from Fifty-ninth street to One Hundred and Tenth street. There are to-day but eight of these fifty-one blocks devoted exclusively to private residences. (Exhibits 11 and 12.) Plaintiff's expert testified: " It is not possible to get an adequate return on the value of that land by any type of improvement other than an apartment house. The structure proposed in the plans of plaintiff is proper and suitable for the site and show 172 rooms which would rent for $1,000 per room. There is an excellent demand for such apartments. * * * There is no corner in the City of New York as fine for an apartment house as that particular corner."

The plaintiff testified also that his expenses in operating the residence which is unproductive would be at least $70,542 greater than if he resided in an apartment. He claims such difference constitutes a loss and contends that the erected apartment house would change this loss into an income or profit of $30,000. Plaintiff claims that under the facts and changed conditions shown the demolition of the building and erection of the proposed apartment is for the best interests of himself as life tenant, the inheritance,

and the remaindermen. The defendants deny these contentions and assert certain affirmative defenses. (1) That the proposed demolition of the residence is waste, which against the objection of the adult defendant remaindermen plaintiff cannot be permitted to accomplish. (2) That Isaac V. Brokaw, before his death as well as by testamentary scheme by his will and codicil created and required the preservation, after his death, of a family center, embracing not only the premises in question but three other plots contiguous thereto or practically so, all of which are part of the original large parcel described above. The other parcels are: (a) No. 984 Fifth avenue, adjoining to the north, being twenty-five feet, six inches wide by one hundred and fifteen feet deep, devised to Howard Brokaw, a son, for life; (b) No. 985 Fifth avenue, adjoining to the north, being of the same dimensions, devised to Irving Brokaw, a son, for life; and (c) No. 7 East Seventy-ninth street, being a plot one hundred and two feet, two inches in depth by forty feet front and thirty-five feet in the rear, adjoining the corner plot to the east, given to the Farmers Loan and Trust Company in trust for the testator's daughter, Elvira Brokaw McNair, during the term of her life, with instructions to expend $250,000 under the direction of said daughter in the erection of a residence thereon. This trust also continues during the life of Elvira, daughter of Mrs. McNair. Residences palatial in character, each costing $344,536.26, had been erected by the testator during his life at 984 Fifth avenue and 985 Fifth avenue, and Howard and Irving Brokaw, respectively, have since resided therein with their families. As instructed by the will, another palatial residence was erected at 7 East Seventy-ninth street after the death of the testator at a cost of $250,000 for said daughter, Elvira Brokaw McNair, and she now occupies the same with her family.

Defendants claim that (3) severance of the premises in question from the rest of the original plot would impair the plottage value of the other parcels and reduce the value of the buildings; (4) the proposed plan of erecting such apartment on the premises is unsound because of the diminutive size of the lot in question in comparison with what is needed for a successful apartment and the increasing tendency to over-build. In addition (5) they assert a defense of *res adjudicata*, claiming that the questions raised here have already been passed upon and decided in the proceeding heretofore brought by the plaintiff for leave to mortgage the premises in question. (*Matter of Brokaw*, 219 App. Div. 337; affd., 245 N. Y. 614.)

Plaintiff's life estate, in my opinion, is not limited by the asserted testamentary scheme. The codicil reads:

" *First*. By the Fourth clause of my Last Will and Testament, dated and executed on the 20th day of April, 1907, upon the death or remarriage of my wife I gave and devised my residence, situated at the northeasterly corner of 79th Street and Fifth Avenue, in the City of New York, to my son, GEORGE TUTTLE BROKAW, but directed that in the event he should not survive her then my executors should sell the said property and divide the proceeds of the sale among the surviving children and the issue of any deceased child of my said son, the issue of a deceased child to take by representation the parent's share. I now hereby modify that provision of my Will and after the death or remarriage of my wife I give and devise my said residence to my son GEORGE TUTTLE BROKAW for and during the term of his natural life and after his death I give and devise the same to his children then living and to the issue, *per stirpes*, of any deceased child of him, their heirs and assigns forever. If my said son should not survive my wife or be living at her remarriage, then upon her death or remarriage I give and devise the said residence to his children then living and to the issue, *per stirpes*, of any deceased child of him, their heirs and assigns forever. In the event that no child nor any issue of any child or children of my son GEORGE TUTTLE BROKAW shall be living at his death, or at the death or remarriage of my wife should he not survive her or be living at her remarriage, then upon his death or the death or remarriage of my wife, as the same may be, I give and devise my said residence in equal shares to my surviving children and the issue, *per stirpes*, of any deceased child of mine, their heirs and assigns forever."

In the 13th paragraph of testator's will, which devised 984 Fifth avenue to Howard Brokaw, and in the 14th paragraph, which devised 985 Fifth avenue to Irving Brokaw, each for life, there is contained a reciprocal restricting clause to the effect that " This property is devised, however, upon the express condition that so much of the land devised as has not been built upon shall forever remain open and unobstructed, in order that it may give access for light and air to this and the adjoining lot on the south (north), and that the airshaft occupying a portion of this lot, and which was provided for the common use and benefit of the buildings upon this lot and the lot adjoining it on the south (north), shall in no way be closed or obstructed. These restrictions of the use of the property hereby devised are intended as conditions subsequent, and immediately upon the violation of them or either of them the title of the devisees hereunder to said house and lot No. 985 (984) Fifth Avenue shall cease and determine and said property be and become a part of my residuary estate; either or both of

these restrictions may be abrogated and canceled by the agreement of the owners in fee of the said two lots, or of my said sons IRVING BROKAW and HOWARD CROSBY BROKAW. In case such owners unite in an agreement to cancel such restrictions, or either of them, such agreement shall be evidenced by a writing executed in like manner as is required for the execution of a deed to be recorded under the laws of this State."

There is neither a similar nor any restriction in paragraph 15 in respect of premises No. 7 East Seventy-ninth street, the trust created for the testator's daughter, Elvira Brokaw McNair, during her life. There is no reference to a restriction or limitation upon No. 1 East Seventy-ninth street, either in the will or codicil. The testamentary scheme, therefore, which the defendants claim was contained in the will and codicil, clearly has no existence. The plaintiff received a plain, unconditional life estate. The plaintiff's estate in the premises involved is independent of the other life estates of the other defendants in their respective dwellings. (*Wiggin* v. *Wiggin*, 43 N. H. 561, and cases therein cited.)

Since the four life estates of the parties are separate and there is no testamentary scheme, it follows that the properties not being in a common ownership can have no plottage value, and such contention by defendants is entirely without merit. The claim of the unsoundness of the venture is also without merit. Indeed, defendants made little effort by proof to uphold such defense. If permissible it would be sound.

That the determination of the proceedings for leave to mortgage the premises is not *res adjudicata* upon the issues in this action is amply sustained by authority. (*Williams* v. *Barkley*, 165 N. Y. 48, at p. 54, and cases cited; also *Everett* v. *Everett*, 180 id. 452; *Perry* v. *Dickerson*, 85 id. 345.) Plaintiff moved to " dismiss " defendants' affirmative defenses. Since the entire action is being decided on the merits, the motion is denied with exception to plaintiff.

Plaintiff claims the Farmers Loan and Trust Company, made a defendant by him, has no real interest and cannot be heard to object to plaintiff's prayer for relief. Such trustee undoubtedly was a proper party defendant. In *Kidd* v. *Dennison* (6 Barb. 9, 17) it was said: " The general rule is that all persons materially interested in the subject-matter of the suit ought to be made parties; and that the *cestuis que trust*, as well as *trustees*, should be brought before the court, so as to make the performance or the decree safe to those who are compelled to obey it, and to prevent the necessity of the defendant's litigating the same question again, with other parties."

Such defendant was, however, only interested in the asserted defenses as to the claimed damage to or effect upon the adjoining property, No. 7 East Seventy-ninth street. As indicated above, such defenses in my opinion are without merit.

Coming, therefore, to plaintiff's claimed right to demolish the present residence and to erect in its place the proposed apartment, I am of the opinion that such demolition would result in such an injury to the inheritance as under the authorities would constitute waste. The life estate given to plaintiff under the terms of the will and codicil is not merely in the corner plot of ground with improvements thereon, but, without question, in the residence of the testator. Four times in the devising clause the testator used the words " my residence." This emphasis makes misunderstanding impossible. The identical building which was erected and occupied by the testator in his lifetime and the plot of ground upon which it was built constitute that residence. By no stretch of the imagination could " my residence " be in existence at the end of the life tenancy were the present building demolished and any other structure, even the proposed thirteen-story apartment, erected on the site.

It has been generally recognized that any act of the life tenant which does permanent injury to the inheritance is waste. The law intends that the life tenant shall enjoy his estate in such a reasonable manner that the land shall pass to the reversioner or remainderman as nearly as practicable unimpaired in its nature, character and improvements. The general rule in this country is that the life tenant may do whatever is required for the general use and enjoyment of his estate as he received it. The use of the estate he received is contemplated and not the exercise of an act of dominion or ownership. What the life tenant may do in the future in the way of improving or adding value to the estate is not the test of what constitutes waste. The act of the tenant in changing the estate, and whether or not such act is lawful or unlawful, i. e., whether the estate is so changed as to be an injury to the inheritance, is the sole question involved. The tenant has no right to exercise an act of ownership. In the instant case the inheritance was the residence of the testator —" my residence "— consisting of the present building on a plot of ground fifty-one feet two inches on Fifth avenue by one hundred and ten feet on Seventy-ninth street. " My residence "— such is what the plaintiff under the testator's will has the use of for life. He is entitled to use the building and plot reasonably for his own convenience or profit. To demolish that building and erect upon the land another building, even one such as the contemplated thirteen-story apartment house,

would be the exercise of an act of ownership and dominion. It would change the inheritance or thing, the use of which was given to the plaintiff as tenant for life, so that the inheritance or thing could not be delivered to the remaindermen or reversioners at the end of the life estate. The receipt by them at the end of the life estate of a thirteen-story $900,000 apartment house might be more beneficial to them. Financially, the objecting adults may be unwise in not consenting to the proposed change. They may be selfish and unmindful that in the normal course of time and events they probably will not receive the fee. With motives and purposes the court is not concerned. In *Matter of Brokaw* (219 App. Div. 337; 245 N. Y. 614) their right to object to a proposed building loan and mortgage for the erection of the proposed apartment was established by decision. They have the same right of objection in this action. To tear down and demolish the present building, which cost at least $300,000 to erect and would cost at least as much to replace, under the facts in this case, is clearly and beyond question an act of waste. In *Winship* v. *Pitts* (3 Paige Ch. 259) Chancellor WALWORTH, although holding that an injunction was properly refused to restrict the erection of a building upon premises where the lease did not specifically limit the use thereof, nevertheless (at p. 262) said: " I have no hesitation in saying, that by the law of this State, as now understood, it is not waste for the tenant to erect a new edifice upon the demised premises; *provided it can be done without destroying or materially injuring the buildings or other improvements already existing thereon. I admit he has no right to pull down valuable buildings, or to make improvements or alterations which will materially and permanently change the nature of the property, so as to render it impossible for him to restore the same premises, substantially, at the expiration of the term.*" (Italics mine.)

In *Agate* v. *Lowenbein* (57 N. Y. 604, 607) the court said: " Had there been no license given to the defendants to do the acts of which the plaintiff complains, the injuries done to the property would have been, apparently, acts of waste, for which the plaintiff could, by the rules of the common law, have brought an action on the case in the nature of waste. (2 R. S. 384; Taylor on Landlord and Tenant, § 348, and cases.) *The right which the tenant has is to make use of the property. The power of making an alteration does not arise out of a mere right of user;* it is, therefore, incompatible with his interest for a tenant to make any alteration, unless he is justified by the express permission of his landlord. (Taylor, § 348.) HOLROYD, J., in *Farrant* v. *Thompson* (5 B. & Ald. 826), defines the extent of a lessee's rights. By a lease, *the use, not dominion, of the property demised, is conferred.* If a tenant exercises an act of

ownership, he is no longer protected by his tenancy," and at page 614 the court said: " It is, in general, no justification for an act of waste that a party will, at some future time, put the premises in the same condition as they were when the lease was made. The question is, whether the tenant, at the time the wrongful act was done, caused an injury which then affected the plaintiff as to his reversion. * * * The tenant has no right to exercise an act of ownership."

In *Kidd* v. *Dennison* (6 Barb. 9, 13) the court said: " So, if the tenant materially changes the nature and character of the buildings it is waste, although the value of the property should be enhanced by the alteration. * * * The tenant has no authority to assume the right of judging what may be an improvement to the inheritance. He must confine himself to the conditions of his lease." (See, also, *Cosgriff* v. *Dewey,* 164 N. Y. 1; *Andrews* v. *D. B. Co.,* 132 id. 348; *Agate* v. *Lowenbein,* 57 id. 604; *McGregor* v. *Brown,* 10 id. 114; *McDonald* v. *O'Hara,* 117 Misc. 517; *Leh-meyer* v. *Moses,* 69 id. 476; *Regan* v. *Luthy,* 16 Daly, 413; 11 N. Y. Supp. 709; *Jackson* v. *Andrew,* 18 Johns. 431; *Douglass* v. *Wiggins,* 1 Johns. Ch. 1; *Sarles* v. *Sarles,* 3 Sandf. Ch. 601; *Pynchon* v. *Stearns,* 52 Mass. 304; *Anstays* v. *Anderson,* 194 Mich. 1; *Stevens* v. *Rose,* 69 id. 259; *King* v. *Miller,* 99 N. C. 583; *Kimble* v. *Newark,* 91 N. J. L. 249; *McCullough* v. *Irvine,* 13 Penn. St. 438; *Dooley* v. *Stringham,* 4 Utah, 107; *Keeler* v. *Eastman,* 11 Vt. 293; *Melms* v. *Pabst Brewing Co.,* 104 Wis. 7; *Doherty* v. *Allman,* 3 L. R. [App. Cas.] 709.)

The cases given by plaintiff are either cases where a prohibitory injunction against future waste has been sought and the parties have been refused the injunction and relegated to an action for damages for waste, or where, in condemnation proceedings or actions in equity, it appears that the equities between the parties are such that the technical waste committed has been ameliorated. The three cases upon which the plaintiff principally relies are *Melms* v. *Pabst Brewing Co.* (104 Wis. 7); *N. Y., O. & W. Ry. Co.* v. *Livingston* (238 N. Y. 300), and *Doherty* v. *Allman* (3 L. R. [App. Cas.] 709). These are readily distinguishable from the case at bar. In *Melms* v. *Pabst Brewing Co.* (*supra*) there was a large expensive brick dwelling house built by one Melms in the year 1864. He also owned the adjoining real estate and a brewery upon part of the premises. He died in 1869. The brewery and dwelling were sold and conveyed to the Pabst Brewing Company. The Pabst Company used the brewery part of the premises. About the year 1890 the neighborhood about the dwelling house had so changed in character that it was situated on an isolated lot standing

from twenty to thirty feet above the level of the street, the balance of the property having been graded down to fit it for business purposes. It was surrounded by business property, factories and railroad tracks with no other dwellings in the neighborhood. The Pabst Brewing Company, in good faith regarding itself as the owner, tore down the building and graded down the ground for business purposes. Thereafter it was held, in the action of *Melms* v. *Pabst Brewing Co.* (93 Wis. 140), that the brewing company had only acquired a life estate in the homestead, although in another action between the same parties (93 Wis. 153) it was held that as to the other property the brewing company had acquired full title in fee. The action for waste in which the decision of 104 Wisconsin was delivered was brought and decided after the decisions in the other actions. We find it there said (at p. 9): "The action was tried before the Court without a jury, and the Court found, in addition to the facts above stated, that the removal of the building and the grading down of the earth was done by the defendant in 1891 and 1892, believing itself to be the owner in fee simple of the property, and that by the said acts the estate of the plaintiffs in the property was substantially increased, and that the plaintiffs have been in no way injured thereby." Again, it was stated (at p. 13): "There are no contract relations in the present case. The defendants are the grantees of a life estate, and their rights may continue for a number of years. The evidence shows that the property became valueless for the purpose of residence property as the result of the growth and development of a great city. Business and manufacturing interests advanced and surrounded the once elegant mansion, until it stood isolated and alone, standing upon just enough ground to support it and surrounded by factories and railroad tracks, absolutely undesirable as a residence and incapable of any use as business property. Here was a complete change of conditions, not produced by the tenant, but resulting from causes which none could control. Can it be reasonably or logically said that this entire change of condition is to be completely ignored, and the iron-clad rule applied that the tenant cannot make change in the uses of the property because he will destroy its identity? Must the tenant stand by and preserve the isolated dwelling house, so that he may at some future time turn it over to the reversioner equally useless? "

The facts in the above case are clearly not analogous to the facts here. Especially is this recognized from the fact that the plaintiff's dwelling house is far from being "isolated and alone, standing upon just enough ground to support it, surrounded by factories and railroad tracks, absolutely undesirable as a residence."

It is located on the northeast corner of Fifth avenue and Seventy-ninth street. Across the avenue to the west is Central Park. To the south across Seventy-ninth street the block Seventy-eighth to Seventy-ninth streets is restricted to private dwellings. The residence itself is surrounded by the three other palatial Brokaw dwellings, forming a magnificent residential layout of the four plots. (Exhibit B.) It may, of course, be that the situation will change in the future. The decision here is concerned only with the present.

*N. Y., O. & W. Ry. Co.* v. *Livingston (supra)* was a condemnation proceeding. The railroad company entered lawfully upon the land and under color of right improved it in good faith with buildings costing $49,000. A hostile right being asserted by the remaindermen, condemnation proceedings were instituted to acquire same. It was held that the railroad company, under the circumstances, could exclude the value of the improvements from the compensation due such remaindermen. *Doherty* v. *Allman (supra)* was an action for an injunction to restrain the converting of the building containing one old large store, which, the neighborhood having materially changed, had no practical use and yielded no income, into tenements which were useful, in demand, and profitable. The court refused the injunction, leaving the aggrieved party to an action for damages, stating, among other things, as follows:

" the external walls of the building are to be retained, and those external walls, where one part of the building is of a lower height than the rest, are to be raised, so that the building may be of a uniform height; internal changes are to be made, internal party walls are to be introduced, the flooring is to be altered in its level and six dwelling-houses are to be made out of this which is now one long store." (P. 717.)

" Suppose the change which is contemplated by the Respondent here is made in the internal arrangements of this which is now a store, will the injury be irremediable? Clearly not. Beyond all doubt as regards the immediate effect it would be beneficial and not injurious to the reversioner; he will have a much better security for his rent, and the property undoubtedly will be increased in value, *and if, when the lease comes to an end, he should have that predilection which he now appears to have for a building of the character which we see represented in this photograph, it would be merely a question of money, and that not a very large sum of money, in order that the building might be brought back to the state in which it now is. Therefore there would be no injury which would be irremediable.*

" Then will damages be a sufficient compensation? "

The facts, it is seen, in none of the cases cited are analogous to the case at bar. The law and procedure therein also contain no analogy. *Melms* v. *Pabst* was a law action for waste claimed to have been committed prior to the action. Upon the existing facts proved at the trial it was found as fact and in equity that the claimed waste was ameliorated and the plaintiff not damaged. *N. Y., O. & W. Ry. Co.* v. *Livingston*, a condemnation proceeding, simply involved the measure of damages under the facts and equities in the case, while *Doherty* v. *Allman*, in equity for injunction, decided only that under the equities an injunction would not be granted and an action at law was adequate.

From the foregoing I am of the opinion, and it will accordingly be adjudged and declared that, upon the present facts, circumstances and conditions as they exist and are shown in this case, regardless of the proposed security and the expressed purpose of erecting the proposed thirteen-story apartment, or any other structure, the plaintiff has no right and is not authorized to remove the present structures on or affecting the real estate in question.

Proposed findings and conclusions passed upon. Submit decision and judgment accordingly on notice.