GEORGE TUTTLE BROKAW, Appellant, Respondent, *v.* ELVIRA JULIANE FAIRCHILD, etc., and Others, Defendants, Impleaded with MARGOT McNAIR FAIRCHILD, Daughter of ELVIRA JULIANE FAIRCHILD, and Others, Appellants, Respondents, and IRVING BROKAW and Others, Respondents, Appellants.

Cross-appeals by plaintiff and by infant defendant Ann Clare Brokaw, by her guardian *ad litem*, Joseph N. Tuttle, and by infant defendants Margot McNair Fairchild and Elvira Brokaw Hutchinson, by their guardian *ad litem*, John J. Curtin, from so much of a judgment of the Supreme Court, entered in the New York county clerk's office on December 24, 1929, as is contained in paragraphs 1, 2, 3, 4 and 15; by Irving Brokaw and certain remaining defendants from so much of said judgment as is contained in paragraphs 5 to 14, inclusive. Judgment so far as appealed from affirmed, without costs. No opinion. Present — Dowling, P. J., Finch, McAvoy, Martin and O'Malley, JJ.; Finch, J., dissents. [135 Misc. 70.]

FINCH, J. (dissenting). This is an action for a declaratory judgment, declaring that equity will not restrain a life tenant and a vested remainderman from removing a partly obsolete dwelling house and erecting in its place a modern apartment house without mortgage incumbrance and wholly at the expense of the life tenant. An injunction is prayed for by a class of contingent remaindermen. The testator left to three sons and a daughter a life interest each in four separate dwelling houses, with remainder to the issue of each, and providing further that if the respective life tenants should die without leaving issue, the dwelling house in question should go to the remaining heirs of the testator. The learned court at Special Term has clearly shown that the testator contemplated no testamentary scheme which made these dwelling houses interdependent. If all the other facts and circumstances were absent, this conclusion might rest alone upon the fact that the testator gave the contingent remainder in each individual dwelling house to a class of persons in the event of the death of the respective children leaving no issue. It is clear, therefore, that this plaintiff has received a plain, unconditional life estate and that the entire remainder is now vested in his daughter, subject only to a contingent remainder in the three other children of the testator and their issue who will be living at the death of the life tenant, provided his young daughter should predecease him. The dwelling house in question was built by the testator many years ago and is of the old-fashioned type. In addition, it appears that obsolescence generally has fallen upon large dwelling houses such as this in the city of New York, due to the disinclination of dwellers to burden

themselves with the care and expense of a large dwelling house, particularly when the same is not completely modern. As a practical matter the upkeep of this dwelling costs the life tenant approximately $70,000 annually, and the greatest amount of rent which he apparently can obtain is $20,000 annually, provided it can be rented at all. He proposes to erect in place of this dwelling house a modern apartment house, for which the site is exceptionally adapted and which the evidence upon this record shows will produce a net income of approximately $100,000 a year. The contingent remaindermen object to this improvement and seek a declaration that equity will restrain what they allege is waste. It is obvious that the opposition to the application of the plaintiff is not based upon any fear of actual damage to the inheritance, but is actuated solely by ulterior motives, namely, because of its effect upon the light and air of the adjoining property, and the very remote possibility of the entire plottage occupied by the aforesaid four dwellings being developed as a unit at some future time. These considerations have no bearing upon the question presented, namely, whether the particular inheritance will be damaged by the act proposed by the plaintiff. Certain it is that there will be no waste in the sense that there will be no *devastavit* but instead a very substantial benefit. Clearly from a monetary point of view, a deficit of some $50,000 in annual income is to be turned into a profit of some $100,000 a year, or a net difference of $150,000 a year. The adjoining owners are, therefore forced to rest upon the objection that this inheritance is being changed from this particular form of dwelling house to a dwelling in apartment form. If the application were to convert the dwelling into a commercial building, the objection would be stronger, but here at the most the change is from one form of dwelling house to another. For such damage as the contingent remaindermen may show they have an adequate remedy in an action at law for damages for waste. The only question which is now presented before us is whether equity will restrain this act. There is a dearth of authority in this country upon this subject. In England, however, the question has arisen more frequently and has given rise to a principle which is connoted under the term "Meliorating waste," where, as here, a situation is presented showing not a *devastavit* but a real benefit to the inheritance. In other words, there is a change in the inheritance, but a change which really benefits the inheritance rather than one which causes a wasting thereof. The leading case on the subject in England is that of *Doherty* v. *Allman* (3 App. Cas. 709), decided by the House of Lords in 1878. A lessee under a lease for 999 years sought to convert into six dwelling houses a store which was on the premises at the beginning of the lease and which the lessee had covenanted to keep in good order and repair, and so to yield the same up at the end of the term. It appeared that the store had become obsolete and that dwelling houses upon the plot in question would be profitable. It was unanimously held that the lessor was not entitled to an injunction to prevent the tenant from making the proposed replacement. This principle has been recognized and approved in *N. Y., O. & W. Ry. Co.* v. *Livingston* (238 N. Y. 300, 307), where Chief Judge CARDOZO, speaking for the Court of Appeals, said: "We do not overlook the argument that a life tenant who turns a farm into a railroad yard commits an act of waste. The effect of the so-called waste in this instance was to add $49,000 to the value. The act, if waste at all (*Pynchon* v. *Stearns*, 11 Metc. 304, 310; *Melms* v. *Pabst Brewing*

*Co.*, 104 Wis. 7; *Winship* v. *Pitts*, 3 Paige, 259; *Agate* v. *Lowenbein*, 57 N. Y. 604, 615), was at the utmost meliorating waste, improving instead of injuring the remainderman's inheritance (*Doherty* v. *Allman*, 3 App. Cas. 709). We think a wrong so technical does not destroy the equities that would otherwise be available for the protection of the occupant, at all events in a case where to the ownership of a life estate there is added color of lawful claim to the ownership of the fee." Equity never acts where the facts are such as in the case at bar. It is inhibited by the fundamental principle that no injunction will issue where the damage to the one seeking the injunction is small as against a large damage to the adverse party. In the case at bar not only will the damage, if any, to the defendants by reason of the change, be small, as compared to great damage to the plaintiff if the change be forbidden, but in addition there is present the remoteness of any actual damage to those opposed to the change, in view of the contingent nature of their interest. It follows that the judgment, in so far as appealed from by the plaintiff and by defendants Ann Brokaw, Margot McNair Fairchild and Elvira Brokaw Hutchinson, should be reversed, and the relief prayed for in the complaint granted.