PREMIUM POINT PARK ASSOCIATION, INC., et al., Appellants, *v.* POLAR BAR, INC., et al., Respondents.

Argued March 9, 1954; decided April 15, 1954.

*Frank H. Connelly* for appellants. I. The defendants' automobile parking lot is an " automobile parking lot ". (*Buffalo Park Lane, Inc.,* v. *City of Buffalo,* 162 Misc. 207; *Matter of Downey* v. *Vanderlinde Elec. Co.,* 276 App. Div. 1044; *Best & Co.* v. *Village of Garden City,* 247 App. Div. 893, 273 N. Y. 564.) II. If there was an ambiguity, it has now been resolved in favor of the plaintiffs by the trier of the facts, and his findings have been affirmed. (*Browne* v. *Paterson,* 165 N. Y. 460; *People* v. *Santa Clara Lbr. Co.,* 213 N. Y. 226; *Lamb* v. *Norcross Bros. Co.,* 208 N. Y. 427; *Trustees of Town of Easthampton* v. *Vail,* 151 N. Y. 463; *Kenyon* v. *Knights Templar & Masonic Mut. Aid Assn.,* 122 N. Y. 247; *Isaacs* v. *Schmuck,* 245 N. Y. 77.) III. The rule of strict construction applies only where the meaning of the covenant still remains doubtful after evidence has been taken, or where no evidence of intention is offered. (*Kitching* v. *Brown,* 180 N. Y. 414; *Booth* v. *Knipe,* 225 N. Y. 390; *Reynolds* v. *Commerce Fire Ins. Co.,* 47 N. Y. 597; *Clark* v. *Devoe,* 124 N. Y. 120; *Coleman* v. *Beach,* 97 N. Y. 545; *Wilson* v. *Ford,* 209 N. Y. 186.)

*John J. Boyle* and *Joseph V. McKee* for respondents. I. The use of defendants' business property for the free, casual parking of its patrons' automobiles does not violate the restrictive covenant which prohibits " a commercial garage, or automobile parking lot." (*People* v. *Thistlethwaite,* 134 App. Div. 876; *Town of Eastchester* v. *Koch,* 282 App. Div. 748; *Schoonmaker*

v. *Heckscher,* 171 App. Div. 148, 218 N. Y. 722; *Johnson* v. *Colter,* 251 App. Div. 697; *Buffalo Academy of Sacred Heart* v. *Boehm Bros.,* 267 N. Y. 242; *Bull* v. *Burton,* 227 N. Y. 101; *Kitching* v. *Brown,* 180 N. Y. 414; *Clark* v. *Jammes,* 87 Hun 215; *Buffalo Park Lane, Inc., v. City of Buffalo,* 162 Misc. 207; *State ex rel. Szodomka* v. *Gruber,* 201 La. 1068; *Breinig* v. *Allegheny Co.,* 332 Pa. 474; *Best & Co.* v. *Village of Garden City,* 247 App. Div. 893, 273 N. Y. 564.) II. The Appellate Division has held, as a matter of law, that the restrictive covenant does not prohibit the use of defendants' business property for incidental parking of its customers' automobiles. This holding is amply supported by the record. (*Newburger* v. *American Sur. Co.,* 242 N. Y. 134.) III. By their inaction and acquiescence in respect of the parking area maintained by Norman Librett, Inc., plaintiffs have given a practical construction to the covenant and they have estopped themselves from enforcing it. (*Flint* v. *Charman,* 6 App. Div. 121; *Moore* v. *Murphy,* 89 Hun 175.)

FULD, J. This is an action to enjoin defendants-respondents, the operators of a refreshment stand in the City of New Rochelle, from using vacant portions of their property as parking space for their customers, on the ground that they thereby violate a restrictive covenant.

Respondent Polar Bar, Inc., acquired the property from its own president, respondent Devlin, and, some time later, built a refreshment stand on the plot. The stand itself occupies but a small part of the premises; the balance is devoted to a parking space which, we are told, can accommodate forty-two cars. The space is solely for the convenience of respondents' customers and parking there by others is not permitted. No charge or fee is levied for parking; all persons making purchases at the Polar Bar pay the same amount for their purchases, whether they arrived by car or not. Customer parking space is unquestionably essential to respondents' business, for the stand fronts on the Boston Post Road, a heavily traveled six-lane thoroughfare, largely devoted to commercial traffic, which makes access by pedestrians difficult. Indeed, it is estimated that, in the summer months, 1,000 persons will patronize the shop daily and that, of these, 90% will arrive by car.

Appellants are owners of property in what is known as the Premium Point Park Development. The Polar Bar plot was part of that development, as first laid out in 1905, and was originally subject to the same highly restrictive covenant as the rest. In the succeeding years, however, the character of the Boston Post Road changed radically. In 1940, the land bordering upon it was zoned by the city as " Class C Business," and by that year the lots now owned by respondents had lost whatever attraction they might have had for homeowners. In 1946, in recognition of that fact, an agreement was drawn up between respondents' predecessor in interest and appellants, permitting the Boston Post Road lots to be used for business purposes. As modified, the restrictive covenant provides that no part of the land between the Boston Post Road and the " Screening Strip " — land conveyed to appellant association to serve as a screen for the development — shall be used for

" (1) A commercial garage, or automobile parking lot.

" (2) A public garage or public automobile filling station.

" (3) Commercial bottling of non-alcoholic beverages.

\* \* \*

" (5) Clubs, lodges, and social buildings in which dancing or bowling may be an incidental use; \* \* \*

" (6) Any use prohibited by the said Zoning Ordinance in the City of New Rochelle in a Class C Business District."

The character of the neighborhood has remained substantially unchanged since 1946.

Concededly, both the covenant and the local zoning ordinance — to which reference is made in subdivision (6) of the covenant — permit respondents to operate a refreshment stand. On the other hand, the prohibition in subdivision (1) against a " commercial garage, or automobile parking lot " would certainly preclude the business operation of a parking lot if that were the sole use to which the property was put. Thus, the narrow question presented is whether subdivision (1) also encompasses and, by that token, prohibits a parking lot, if it is merely incidental to, a necessary accommodation for the customers of, a permissible business.

While the term " parking lot " taken by itself may be ambiguous, it may not be so regarded when considered in its present context. When read, as it must be, in conjunction with the term " commercial garage " and in the light and against the background of the covenant as a whole, its significance is plain and unambiguous. By prohibiting a " commercial garage," the parties clearly indicated their intent that the property should not be used for the *business* of storing automobiles for a stipulated rental. (See *Town of Eastchester* v. *Koch,* 282 App. Div. 748; *State ex rel. Szodomka* v. *Gruber,* 201 La. 1068; *Breinig* v. *Allegheny Co.,* 332 Pa. 474, 484.) By parity of reasoning, the parking lot prohibited is one conducted and operated in and of itself as a commercial venture, as an independent enterprise, apart from the business of selling comestibles. Furthermore, since the covenant permits the conduct of the business itself, the conclusion is almost inescapable that it permits whatever is customarily and necessarily incidental thereto. We may not construe the covenant as prohibiting in one subdivision that which it expressly sanctions in another.

When the parties did decide to prohibit incidental uses — whether for parking or other purposes — they knew how to express their intention, as evidenced by subdivision (5) which specifically bans " Clubs, lodges, and social buildings in which dancing or bowling may be an *incidental use* ". (Emphasis supplied.) Having failed to prohibit parking lots for such use, it is reasonable to conclude that it was not their purpose to prevent them.

If there be any lingering doubt that the " commercial garage, or automobile parking lot ", proscribed by subdivision (1), does not take in customer parking, it is dispelled by reading it in connection with subdivision (2) which prohibits a " public " garage, but, significantly, not a " public " parking lot. The parties apparently regarded a " commercial " parking lot as distinct and different from a " public " lot and quite plainly they did not intend to prohibit the latter. Since that be so, then it follows that respondents have not violated the covenant. (Cf. *Best & Co.* v. *Village of Garden City,* 273 N. Y. 564, affg. 247 App. Div. 893.)

Even if, however, the covenant were deemed ambiguous, the judgment dismissing the complaint should be affirmed, in view of the undoubted fact that respondents' suggested construction is at least a reasonable one. The law favors the free and unobstructed use of property, and it is well settled that, if a restrictive covenant is capable of more than one interpretation, it will be construed against the party who is endeavoring to extend it. (See *Buffalo Academy of Sacred Heart* v. *Boehm Bros.*, 267 N. Y. 242, 249; *Schoonmaker* v. *Hecksher*, 218 N. Y. 722, affg. 171 App. Div. 148, 151.) Appellants resist the application of this rule. They contend that any ambiguity in the covenant should be resolved in their favor because the trial judge found that they " refused to consent to the use of the property as an automobile parking lot, even in connection with an automobile sales agency or service building." There is nothing in the record to support that conclusion. What does appear is that an earlier draft of the covenant, prepared by respondents' predecessor, prohibited " A commercial garage or automobile parking lot *except in conjunction with an automobile sales agency and service building on the premises.*" (Emphasis supplied.) The draft was submitted to appellant association which, in preparing the agreement before us, omitted the exception quoted. Considered by itself — for it is the only evidence on the point — the deletion of the " except " clause is wholly equivocal and throws no light on the parties' intention with respect to incidental parking lots.

The Appellate Division reversed the judgment rendered in favor of appellants and dismissed the complaint on the law alone. In so doing, it held that, since the covenant was ambiguous, it must be construed in favor of a more free use of the property. Because it affirmed the facts found below — which included the finding that appellants refused to permit even an incidental parking lot — appellants contend that the judgment could not properly be reversed unless that finding were also reversed. That is not so. The court undoubtedly concluded that, since there was an ambiguity, it was bound — despite the finding in question — to adopt respondents' interpretation. In any event, the Appellate Division is not to be taken as having affirmed a finding, such as the one here invoked

by appellants, not only factually irrelevant to the decision arrived at, but erroneous as a matter of law.

The judgment of the Appellate Division should be affirmed, with costs.

LEWIS, Ch. J., CONWAY, DESMOND, DYE, FROESSEL and VAN VOORHIS, JJ., concur.

Judgment affirmed.