Howard T. Hogan, J.,
Plaintiffs herein, property owners, seek to enjoin defendant from completing the construction of certain commercial buildings on the south side of Merrick Road in Massapequa, and to compel him to remove all partially completed structures.
All the parties have derived their titles by mesne conveyances from a common grantor, the estate of William Floyd-J ones. The executors and trustee were given the testamentary power *314 to sell all the lands of the deceased situated on both the north and south sides of Merrick Road. In 1919, they conveyed all said land lying on the north side, comprising 30 acres, to one Corroon, and presumably as a consideration for that sale, agreed to impose certain restrictions on the remaining land lying opposite, on the south side of Merrick Road, for the benefit of the purchaser.
In 1925, they conveyed the rest of the property, comprising about 500 acres to Deauville Estates, Inc., said conveyance containing the following covenant: ‘ ‘ The party of the second part, for itself, its successors and assigns, covenants and agrees to and with the parties of the first part, their successors and assigns that neither the party of the second part nor its successors shall or will erect on that portion of the premises hereby conveyed fronting on Merrick Road, lying directly opposite to certain land heretofore conveyed by the parties of the first part hereto to Richard A. Corroon, to a depth of 500 feet from said road, any building except for residential purposes and costing less than $3500. This covenant is herein inserted for the protection of said Corroon property and may be modified or released at any time by agreement between the owners of any portion of the restricted area and the owner of the Corroon property.” (Emphasis supplied.)
Subsequently, the grantee changed its name to Biltmore Shores, Inc., filed a map of its property entitled, “ Section A, Map of Biltmore Shores” in 1926, and proceeded to develop it with several hundred one-family residences, reserving however, a portion forming the southwest corner of Merrick Road and Bayview Avenue, having a frontage of 100 feet and a depth of 150 feet, and constituting the locus in quo. This vacant parcel was conveyed in 1929 to one Thursby, by deed containing the following restrictions: “No building shall be erected upon any part of the premises herein described except a. detached dwelling house designated and to be occupied and used as a one-family dwelling, and said dwelling shall not be built of wood but shall be constructed of cement, brick, hollow tile, stucco, or of any other material except wood. ’ ’
In the meantime, the Corroon family had developed the 30 acres on the north side into a palatial estate consisting of a large, ornate mansion, landscaped grounds, a private lake, docks and paved roads. For many years, it was one of the most distinctive homes on the south shore of Long Island. Changing times, however, rendered it obsolete, and in 1947 it was sold. The mansion has been torn down, the estate subdivided, and today, more than 100 small homes now occupy the *315 land on which it stood. Those fronting on the Merrick Road are, for the most part, also the offices of professional persons, such as doctors, dentists, chiropractors, photographers and a naturopath.
These plaintiffs fall into two groups. The first, owners of property on the north side of Merrick Road, as assignees, rely upon the restrictions made for the benefit of the Corroon family, while those whose property lies on the south side, assignees of Biltmore Shores, Inc. (now defunct) all rely upon a common scheme of development as well as the aforesaid restrictions. Both oppose defendant’s proposed use of the subject property for commercial purposes.
The various defenses will be treated seriatim. The contention that the executors of William Floyd-Jones had no power to impose restrictions upon any part of the realty is without merit. They were expressly empowered and directed by his will to sell and to distribute the proceeds among his surviving descendants. As an inducement to Corroon to purchase, they could agree to restrict the use of the remaining acreage so as to increase the value (and presumably the purchase price) of the portion sold. The trustee herein actually held legal title to all the property, but even an executor having merely a naked power of sale may sell a portion of the estate and encumber the remainder when this will further an advantageous sale (Simmons v. Crisfield, 197 N. Y. 365).
Nor is it material that the Town of Oyster Bay has zoned this subject property for business uses since 1929. The fact that in the opinion of a planning board, land is best suited for commercial development, does not nullify or supersede a valid restriction upon the use of real property which in no way threatens or endangers the safety, health, comfort or general welfare of the community (26 C. J. S., Deeds, § 171, p. 1181). Zoning per se does not abolish restrictive use of lands where such restrictions are imposed by covenants in recorded instruments (8 McQuillin on Municipal Corporations [3rd ed.], pp. 31-33; Premium Point Park Assn. v. Polar Bar, 121 N. Y. S. 2d 596, revd. on other grounds 282 App. Div. 735, affd. 306 N. Y. 507).
The further fact that certain other property owners in the neighborhood also may be violating the restrictions without objection on the part of these plaintiffs is of no consequence (Rowland v. Miller, 139 N. Y. 93; McClure v. Leaycraft, 183 N. Y. 36). Plaintiffs may ignore inoffensive violations and still restrain those which are offensive to them (La Place v. Ruehl, 206 App. Div. 761, citing Chesebro v. Moers, 233 N. Y. 75).
*316 On the other hand, it appears that the restrictions were not part of a common plan or scheme devised for the benefit of these plaintiffs and others so situated. Their true purpose seems to have been the enhancement and protection of the Corro on estate (see covenant in the deed to Corroon, supra). It may be noted that there is no one now able to modify or release this covenant, since the estate has been broken up and sold to more than 100 individual home owners. By reason of this very fact the original purpose of the restriction no longer exists.
Similarly, the restriction placed in the deed to the subject property from Biltmore Shores, Inc. to Thursby in 1929 (supra) may not be modified or released, since the grantor has been dissolved. Other covenants imposed by Biltmore Shores, Inc., however, have been disregarded, possibly for want of someone to enforce them. It gave to the seller the right to approve building plans for “ the fundamental purpose of maintaining the dignity, character and natural beauty of the entire tract * * * and for the additional purpose of preserving and maintaining a fair unity of design and type of building* to be erected thereon.” There is no longer any unity of design among the homes in this neighborhood.
It further appears that there have been drastic changes in the area within the past two decades. Upon the consent of all parties, the court has visited the neighborhood and has observed that literally hundreds of small homes have been built or are in the process of construction on both sides of Merrick Road. To both the east and west are large shopping centers and up until the occurrence of a recent fire, there had been a so-called “ Farmer’s Market ” a short distance to the west. Merrick Road always has been a main artery of east-west traffic, and in spite of the advent of the various parkways and other highways, the volume of traffic has greatly increased. At all hours there is a constant stream of commercial vehicles which can be expected to keep pace with the needs of the growing population. In the opinion of the court, none of these developments was within the contemplation of the original parties to these covenants.
Another defense to be considered is the alleged laches of the plaintiffs. It appears that for some time before commencing construction, defendant maintained a sign upon his property advertising his intention of erecting stores thereon, and displaying his telephone number for the convenience of those interested. Then he began operations in full view of the plaintiffs, who made no move until the stores were more than 50% *317 completed. Such conduct frequently has been held to amount to an estoppel. In the case of University Gardens Property Owners Assn. v. Schultz (272 App. Div. 949) the Appellate Division in this department held as follows: ‘ ‘ Respondent was slow to invoice the process of the court to preserve the status quo. Its failure to apply to the court to enjoin the continuance of construction of the building from the time that it knew such construction had commenced until the trial of the action, during which period the building was completed at considerable cost to appellant, was an inexcusable delay, which will not be countenanced in an action for such injunctive relief. ’ ’
In Finn v. Morgan Is. Estates (283 App. Div. 1105, 1106) it was likewise held that even though the construction of a chapel was a violation of a restrictive covenant, “ equitable relief should be denied to plaintiff in view of the fact that the construction of the chapel was about 70% completed at the time of the commencement of this action.” It relegated the plaintiff to any legal damages he might be able to prove by reason of such violation. (These plaintiffs have not included a prayer for such relief.)
Forstmann v. Joray Holding Co. (244 N. Y. 22) is further authority for the rule that where injunctive relief is sought, the one seeking it must invoke the process of the. court with reasonable diligence in order to preserve the status quo.
Weighing the equities and the facts already found, the court concludes that these restrictions have outlived their justification, that changing conditions have rendered them unnecessary to the purposes for which they were adopted, and that they impose an unwarranted burden upon the subject property. “ The law favors the free and unobstructed use of property ”. (Premium Point Park Assn. v. Polar Bar, 306 N. Y. 507, 512.)
The court further concludes that the plaintiffs, by failing to invoke the processes available to them until defendant had completed more than 50% of his construction, are guilty of laches and are now estopped from enforcing the aforesaid restrictions. Defendant accordingly, is entitled to judgment dismissing the complaint, without costs.
The foregoing are the facts found by the court and constitute the decision of the court as required by section 440 of the Civil Practice Act.