OPINION OF THE COURT
 

 Chief Judge Cooke.
 

 The question presented on this appeal is whether a tenant has the right to make substantial changes to the demised premises. Such a right may arise from statute or contract. When, however, the instrument governing the tenancy prohibits such alterations, the tenant may not proceed under either authority.
 

 
 *400
 
 The individual respondents are the holders of a reversionary interest in property located in New Hyde Park which is under a long-term land lease that was originally executed by the predecessor in interest to respondent S.F.R. Realty Associates. Initially, an “anchor building” of 100,000 square feet in a shopping center was leased to W.T. Grant Company, which subsequently sold its interest to petitioner in 1976.
 

 At the end of 1981, petitioner exercised an option to close its store. It vacated the premises in early 1982 and began looking for a suitable subtenant for all or part of the building. It eventually reached an agreement with Grace Realty Corporation, which was to sublease approximately 51% of the floor area for use as a “Channel Home Center” store. To accommodate the sublessee, petitioner made substantial nonstructural changes inside and proposed four exterior changes: (1) extending an existing sign canopy, which would require piercing the roof’s waterproofing membrane; (2) adding decorative brick fascia to the I-beams that would support the canopy extension; (3) installing a new ingress/egress door and a related glass front; and (4) adding a loading door at the rear of the building. It is obvious that these constituted substantial structural modifications. When petitioner gave notice of its intent to make these alterations, however, S.F.R. Realty objected and declared that they would violate the terms of the lease. Petitioner commenced this special proceeding, claiming that it had both a statutory and contractual right to make the proposed changes.
 

 The essence of this controversy has its genesis in the law against waste. At common law, a tenant’s only right was to make use of property; a right to alter the property did not arise unless the landlord expressly permitted it (see
 
 Agate v Lowenbein,
 
 57 NY 604, 607-608). This principle was applied even when the tenant could not economically maintain the property without the change and the alteration would have increased the property’s value (see
 
 Brokaw v Fairchild,
 
 135 Misc 70, affd no opn 231 App Div 704, affd no opn 256 NY 670). The Legislature long ago acted to ameliorate the harsh effects of this doctrine (L 1937, ch 165), which effort is now codified in RPAPL 803. That
 
 *401
 
 statute sets forth certain conditions under which a tenant for life or for years may alter the property over the objections of any owner of a future interest. In brief, the tenant must establish that a prudent owner would make the same change, which will not reduce the market value of the future interests and does not violate any contract regulating the tenant’s conduct. In addition, the tenancy must be expected to continue for more than five years, and written notice of the intention to make the alteration must be given. Finally, the owner of a future interest may obtain security that the proposed alteration will be completed.
 
 [1]
 

 Petitioner asserted two grounds for its right to make the proposed changes to the building. First, it contended that the lease either expressly permitted the changes or was silent on the issue. Paragraph 6(a) authorized petitioner to “make any interior non-structural alterations, additions
 
 *402
 
 and improvements * * * which it may deem necessary or desirable provided Tenant does not thereby weaken the structure of the building” and “provided it does not interfere with the quiet enjoyment of other tenants, [to] remove all or any part of any wall of any building * * * to afford entrance to or connection with improvements on adjoining premises * * *”.
 
 [2]
 
 Petitioner secondly argued that, as a concomitant of its contractual right under Paragraph 12 to sublet or subdivide the premises, it was empowered to make exterior, structural changes.
 

 Neither of the lower courts expressly addressed petitioner’s second contention. The trial court concluded that petitioner satisfied the conditions of RPAPL 803 (subd 1) and was entitled to make the proposed exterior alterations. In reaching its determination, the court found the lease to be “silent and nonprohibitive” with respect to the proposed exterior alterations. The Appellate Division unanimously reversed on the reasoning that the express permission to undertake certain alterations granted in Paragraph 6(a) must be interpreted to implicitly prohibit all other alterations. This court now affirms.
 

 Much of petitioner’s argument before this court relies on the breadth that it proposes should be accorded to the Legislature’s liberalization of the law of waste. This question would be especially pertinent if the controversy were focused on paragraphs a or b of RPAPL 803 (subd 1). Inasmuch as this statutory issue can be reáolved on the basis that the lease prohibited the proposed alterations so as to preclude satisfying paragraph c, it is unnecessary to
 
 *403
 
 decide the scope of the Legislature’s amendment of the common law.
 

 RPAPL 803 (subd
 
 1,
 
 par c) permits a “proposed alteration or replacement [that] is not in violation of the terms of any agreement or other instrument regulating the conduct of the owner of the estate for life or for years or restricting the land in question”. Applying this provision obviously calls for an interpretation of petitioner’s contract. Under the present circumstances, this presents a question of law which this court may consider free of the lower courts’ determinations (see
 
 West, Weir & Bartel u Mary Carter Paint Co.,
 
 25 NY2d 535). In construing a contract, one of a court’s goals is to avoid an interpretation that would leave contractual clauses meaningless (see
 
 Corhill Corp. v S. D. Plants, Inc.,
 
 9 NY2d 595, 599;
 
 Muzak Corp. v Hotel Taft Corp.,
 
 1 NY2d 42, 46).
 

 Paragraph 6(a) of the lease was the only provision of that contract discussing alterations to the building. Its title — “alterations, walls, Etc.” — indicates that it was intended to be a comprehensive treatment of that subject. Having been prepared by petitioner’s predecessor in interest, it is construed against the tenant (see
 
 151 West Assoc, u Printsiples Fabric Corp.,
 
 61 NY2d 732, 734). Critically, Paragraph 6(a) omitted any reference to exterior structural alterations. The section expressly authorized two types of modifications: interior, nonstructural alterations, and removing walls to permit access to improvements on adjoining premises. In neither case did these authorize making structural changes to afford access between petitioner’s premises and the parking lot. The first clearly did not apply to the exterior structural changes at issue here.
 
 [3]
 
 The latter provision, viewed in context, must be read as concerning alterations to provide direct access from petitioner’s building to the portions of the shopping center occupied by other tenants, not to the parking lot.
 

 Thus, it must be determined whether the lease, prepared by the tenant, prohibited the changes proposed by petitioner. In considering this problem, guidance is provided
 
 *404
 
 by the doctrine of
 
 “inclusio unius est exclusio alterius,”
 
 an applicable maxim when interpreting contracts (see
 
 Woodmere Academy v Steinberg,
 
 41 NY2d 746, 750). Under all the circumstances here, the specification of certain permitted activities in Paragraph 6(a) should be read as implicitly prohibiting other alterations.
 

 Petitioner also posits that it was empowered to make external structural changes as a concomitant to its contractual right to sublet or subdivide granted in Paragraph 12 of the lease, relying on a single New York case
 
 (Klein’s Rapid Shoe Repair Co. v Sheppardel Realty Co.,
 
 136 Misc 332, affd no opn 228 App Div 688) and a number of out-of-State decisions
 
 (Sherwood Med. Inds. v Building Leasing Corp.,
 
 527 SW2d 407 [Mo App];
 
 Fair West Bldg. Corp. v Trice Floor Coverings,
 
 394 SW2d 707 [Tex Civ App];
 
 Turman v Safeway Stores,
 
 132 Mont 273;
 
 Sparkman v Hardy,
 
 223 Miss 452;
 
 Spring St. Realty Co. v Trask,
 
 126 Cal App 765;
 
 Mayer v Texas Tire & Rubber Co.,
 
 223 SW 874 [Tex Civ App];
 
 Kresge v Maryland Cas. Co.,
 
 154 Wis 627). These decisions support petitioner’s argument only in the general sense that they recognize a power to make alterations as inherent in the right to sublet and subdivide. Only two, however, involved situations where the tenant was attempting to make structural or permanent changes, especially to an exterior wall (see
 
 Turman v Safeway Stores, supra; Spring St. Realty Co. v Trask, supra).
 
 In each instance, the courts relied on other lease provisions concerning alterations to justify a right in the tenant to make the challenged substantial modifications.
 

 The sounder approach is to accept petitioner’s basic premise — that a right to sublet or subdivide implicitly includes a power to make alterations — but recognize that Paragraph 6(a) was intended to describe the nature and scope of changes that could be made. The foremost feature recommending this analysis is that it would avoid rendering Paragraph 6(a) meaningless. Under petitioner’s interpretation, Paragraph 12 gave it a broad power to alter the premises as it deemed necessary for subletting. As a prohibitive clause, however, Paragraph 6(a) would be meaningless if not given effect here because all the conduct it restricts could be freely pursued under Paragraph 12.
 

 
 *405
 
 This court has previously recognized that, generally, a contract which expressly permits an activity will not be construed to prohibit other conduct necessary to carrying out that activity. “[Sjince the covenant permits the conduct of the business itself, the conclusion is almost inescapable that it permits whatever is customarily and necessarily incidental thereto. We may not construe the covenant as prohibiting in one subdivision that which it expressly sanctions in another”
 
 (Premium Point Park Assn. v Polar Bar,
 
 306 NY 507, 511). In
 
 Polar Bar,
 
 a refreshment stand was held to have an incidental right to maintain a parking lot, notwithstanding a restrictive covenant to the contrary, when the stand was located in an area not readily available to pedestrian traffic and 90% of the customers (which could reach 1,000 per day) arrived by car. In contrast, the record here does not demonstrate that petitioner’s power to sublet or subdivide 100,000 square feet will be practically defeated if it is not allowed to make structural changes to the exterior wall, as opposed to being limited to erecting partitions and making other interior, nonstructural changes.
 

 Petitioner has failed to establish either that the lease did not prohibit the proposed alterations or that it permitted them. As such, it has no right to make these modifications under RPAPL 803 or the contract.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Jasen, Jones, Wachtler, Meyer, Simons and Kaye concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . In its entirety, the statute provides:
 

 “§ 803. Alterations or replacements of structures by person having estate for life or years.
 

 “1. When a person having an estate for life or for years in land proposes to make an alteration in, or a replacement of a structure or structures located thereon, then the owner of a future interest in such land can neither recover damages for, nor enjoin the alteration or replacement, if the person proposing to make such alteration or replacement complies with the requirements hereinafter stated as to the giving of security and establishes the following facts:
 

 “a. That the proposed alteration or replacement is one which a prudent owner of an estate in fee simple absolute in the affected land would be likely to make in view of the conditions existing on or in the neighborhood of the affected land; and “b. That the proposed alteration or replacement, when completed, will not reduce the market value of the interests in such land subsequent to the estate for life or for years; and
 

 “c. That the proposed alteration or replacement is not in violation of the terms of any agreement or other instrument regulating the conduct of the owner of the estate for life or for years or restricting the land in question; and “d. That the life expectancy of the owner of the estate for life or the unexpired term of the estate for years is not less than five years; and “e. That the person proposing to make such alteration or replacement, not less than thirty days prior to commencement thereof, served upon each owner of a future interest, who is in being and ascertained, a written notice of his intention to make such alteration or replacement, specifying the nature thereof, which notice was served personally or by registered mail sent to the last known address of each such owner of a future interest.
 

 “2. When the owner of a future interest in the affected land demands security that the proposed alteration or replacement, if begun, will be completed and that he be protected against responsibility for expenditures incident to the making of the proposed alteration or replacement, the court in which the action to recover damages or to enjoin the alteration or replacement is pending, or if no such action is pending, the supreme court, on application thereto, on such notice to the interested parties as the court may direct, shall fix the amount and terms of the security reasonably necessary to satisfy such demand. The furnishing of the security so fixed shall be a condition precedent to the making of the proposed alteration or replacement.
 

 “3. This section applies only to estates for life or for years created on or after September 1, 1937.”
 

 [2]
 

 . The complete text of Paragraph 6(a) provided: “The Tenant at its own expense may from time to time during the term of the lease make any interior non-structural alterations, additions and improvements in, on and to Parcel No. 1 of the demised premises which it may deem necessary or desirable provided Tenant does not thereby weaken the structure of the building on the demised premises but it shall make them in a good and workmanlike manner and in accordance with all valid municipal and State' requirements applicable thereto. The Tenant may, provided it does not interfere with the quiet enjoyment of other tenants, remove all or any part of any wall of any building standing on the demised premises to afford entrance to or connection with improvements on adjoining premises, and in the event of such removal of walls then, if requested in writing by the Landlord at least ninety (90) days before the expiration of the term, or of any extension thereof should the term be extended, the Tenant at its expense shall restore said wall so far as practicable to its former condition. All salvage from such work shall belong to the Tenant but all permanent improvements (except as otherwise herein provided) shall belong to the Landlord and become part of the premises subject to the lease.”
 

 [3]
 

 . Petitioner’s argument that “interior non-structural alterations, additions and improvements” — refers to two different activities — “interior non-structural alterations” and “additions and improvements” is unsound and can be summarily dismissed.