■ TIME ASSOCIATES, INC., Respondent-Appellant, v BLAKE REALTY, INC., et al., Appellants-Respondents. [622 NYS2d 816] —Yesawich Jr., J. Cross appeals from an amended order and judgment of the Supreme Court (Lomanto, J.), entered December 10, 1993 in Schenectady County, upon a decision of the court in favor of plaintiff.

Plaintiff and defendant Blake Realty, Inc. entered into a contract by the terms of which Blake was to purchase, for $100,000, certain assets of plaintiff's real estate brokerage business, along with a covenant not to compete in the local residential real estate market. Blake made a downpayment of $25,000 and executed a promissory note guaranteed by its president, defendant Jeffrey G. Christiana, for the remaining $75,000. After making the first interest payment on the note, however, Blake refused to tender any additional amounts, contending that plaintiff's use of the name "Time Associates, Inc." for its continuing real estate activities constituted a material breach of the contract, relieving Blake from any further obligation to pay. Plaintiff thereafter brought this suit to recover the amount due on the note.

The parties stipulated to certain material facts, including the existence of the contract and note, plaintiff's demand for payment and defendants' failure to pay. A jury trial was commenced, but after plaintiff rested the parties waived their right to a jury and proceeded to try the case before the court. Supreme Court found defendants in default under the note and further that the default was not excused by plaintiff's breach, which it characterized as "insignificant". Given the disposition we reach, it suffices to note that defendants appeal from the amended order and judgment which was entered in plaintiff's favor, and plaintiff cross-appeals for the purpose of challenging the court's computation of interest.

Supreme Court correctly found that Christiana's oral agreement at the closing, that plaintiff would not be required to change its name, and plaintiff's reliance on that representation, effectively nullified the first sentence of paragraph 8.6 of the contract, which called for plaintiff to formally change its corporate name. We are unable to agree, however, with the court's conclusion that paragraph 8.7—which dealt with the actual use of the name in the real estate business—was rendered equally ineffective, for there is no evidence that defendants ever made any representation that such use would be acceptable. Nor does it appear that paragraphs 8.6 and 8.7 were intended to be interdependent. Having so concluded, it is necessary to determine whether plaintiff actually breached its obligations under paragraph 8.7, and if so, whether a liquidated damage provision contained therein should be enforced to bar the recovery plaintiff seeks.

Paragraph 8.7, which embodies a warranty by plaintiff and its shareholders that they "will not use the name 'Time Associates' in connection with a real estate brokerage, real estate development or other firm engaged in any fashion in the real estate business within the non-competition area hereinafter set forth", and further provides that in the event these restrictions are breached plaintiff will lose its right to further payment on the note, must be considered in conjunction with paragraph 10.6, the noncompetition clause. That clause prohibits plaintiff from operating a "residential real estate brokerage and sales business" within a radius of 50 miles from the Niskayuna post office in Schenectady County, for a period of seven years. Plaintiff argues that paragraph 8.7 bars its use of the name only in connection with a residential real estate brokerage carried on within the 50-mile area of the noncompetition clause; defendant contends that the noncompetition area alluded to in paragraph 8.7 merely defines the geographi-

cal region in which *any* use of the name in connection with real estate activities is prohibited. This latter construction is compelling, for no purpose would be served by forbidding use of the name only in connection with activities that are, by their very nature, already proscribed by paragraph 10.6 *(cf., Two Guys from Harrison-N.Y. v S.F.R. Realty Assocs.,* 63 NY2d 396, 404). Moreover, limiting the scope of paragraph 8.7 in the way urged by plaintiff renders meaningless the specific inclusion of real estate activities which plaintiff and its shareholders are permitted to engage in by paragraph 10.6. The interpretation suggested by defendants is preferable, for it gives effect to both clauses at issue *(see, Klestinec v Thruway Terms.,* 124 AD2d 988, 989, *lv dismissed* 69 NY2d 822); while paragraph 10.6 allows plaintiff to engage in certain real estate activities within the 50-mile radius specified therein, paragraph 8.7 prohibits the use of the name "Time Associates" in connection therewith.

Moreover, the trial evidence established that plaintiff did indeed use the name "Time Associates" in connection with a continuing commercial real estate and property development business, and that its actions in this regard were not inadvertent or unintentional. While there was no evidence that plaintiff actually engaged in the business of residential real estate sales, Reginald Scott, its president, testified that he kept working in the fields of commercial brokerage and real estate development. The indisputable evidence is that Scott continued to use the name in telephone directory listings, had signs on his new offices and a listing in the building directory as "Time Associates," and applied for membership in the Albany County Board of Realtors using that name. A receptionist at Scott's new office location testified that she had been directed to answer the phone using the name "Time Associates", and that while she was to direct calls involving residential matters to Blake, calls involving commercial, development and other matters were to be routed to Scott. Finally, although Scott claims that he did not read the agreement prior to signing it, and was under the impression that he had not violated its terms, he is a sophisticated businessman whose failure to read the contract cannot excuse his noncompliance *(see, Fiore v Oakwood Plaza Shopping Ctr.,* 78 NY2d 572, 582, *cert denied* — US —, 113 S Ct 75).

Nor are we amenable to plaintiff's contention that the forfeiture imposed as a result of the breach represents an impermissible penalty, and consequently cannot be used to bar its recovery of the balance of the note. A liquidated

damages clause is enforceable if, at the time it is executed, it appears that the amount of actual loss stemming from a breach will be impossible or difficult to ascertain, and the amount called for in the contract is reasonably proportionate to the probable loss from the breach *(see, Truck Rent-A-Ctr. v Puritan Farms 2nd,* 41 NY2d 420, 425). These conditions were met here. The difficulty in calculating the actual damages resulting from plaintiff's continued use of the name is apparent for it requires predicting, in the aftermath of a breach, the amount of business that would have been available to Blake had plaintiff adhered to its contractual commitments.

Furthermore, the amount forfeited by plaintiff, which would decrease from $75,000 to zero over the seven years of the note, is not "grossly disproportionate to" the probable loss which a breach would inflict. In this respect, it is noteworthy that it was agreed that $45,000 of the purchase price was attributable to the value of plaintiff's "good will" and the covenant not to compete, the value of which would be drastically reduced in the event of a breach. It was eminently reasonable that the amount forfeited would decline over time, for it could be anticipated that Blake's reputation would, as time progressed, be based more on its own performance and less on the "good will" it had purchased from plaintiff, and thus would suffer less from a breach by plaintiff, until, at the end of seven years—the time at which plaintiff was again free to compete and to use the name in any way it desired—no damage could be expected to accrue.

Lastly, defendants adduced proof that their actual "company dollar" for the years 1985 and 1986 was $61,000 and $108,000, respectively, and Christiana's assertion that plaintiff had reaped approximately $150,000 in each of several preceding years was not controverted. While this is not conclusive, it demonstrates that the actual damage suffered by defendants as a result of this breach may have been significantly in excess of $75,000, providing further indication that the amount of the forfeiture contemplated was not unduly harsh *(cf., Weiss v Weiss,* 206 AD2d 741, 742-743). In sum, we find that defendants are relieved of any further obligation to pay on the note.

Mikoll, J. P., Mercure, White and Casey, JJ., concur. Ordered that the amended order and judgment is reversed, on the law and the facts, with costs, and complaint dismissed.