## In re OAKWOOD HOMES CORPORATION, et al., Debtors.

**OHC Liquidation Trust, by and through Alvarez & Marsal, LLC, the OHC Liquidation Trustee, Plaintiff,**

v.

**United States Fire Insurance Company, Defendant.**

**Bankruptcy No. 02–13396 (PJW).**
**Adversary No. 04–57054 (PJW).**

United States Bankruptcy Court, D. Delaware.

Oct. 3, 2008.

Donna Culver, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Robert Stark, Emilio A. Galván, Dana S. Montone, Brown Rudnick LLP, New York, NY, for Plaintiff OHC Liquidation Trust.

Russell C. Silberglied, Lee E. Kaufman, Richards, Layton & Finger, P.A., Wilmington, DE, Louis A. Modugno, McElroy, Deutsch, Mulvaney & Carpenter, LLP, Morristown, NJ, for Defendant United States Fire Insurance Company.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the supplemental briefs (Doc. ## 111, 113 and 114) submitted by the parties in connection with plaintiff OHC Liquidation Trust's ("OHC Trust") motion for summary judgment (Doc. # 69). United States Fire Insurance Company ("U.S.Fire") asserts that OHC Trust must indemnify U.S. Fire for attorneys' fees incurred in connection with this litigation pursuant to the Indemnity Agreement (the "Agreement") executed by the debtor Oakwood Homes Corporation ("Oakwood") in favor of U.S. Fire. For the reasons discussed below, I conclude that the Agreement does not require OHC Trust to indemnify U.S. Fire for attorneys' fees incurred in the instant litigation.

## BACKGROUND

On November 15, 2002, Oakwood and certain of its affiliates petitioned for relief under chapter 11 of title 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* On March 31, 2004, the Court entered an order confirming Oakwood's plan of reorganization (the "Plan"). The Plan established a liquidating trust, OHC Trust. OHC Trust was vested with the right to prosecute causes of action on behalf of the holders of beneficial interests in the OHC Trust. (Doc. # 70, p. 5.)

Oakwood was a manufacturer and retailer of manufactured homes. Prior to filing for chapter 11 relief, U.S. Fire agreed to provide surety bonds in order to secure certain performance obligation of Oakwood in the regular course of its business. To induce U.S. Fire to issue the bonds, Oakwood entered into the Agreement, dated December 13, 2001, which required Oakwood to post collateral with U.S. Fire. After Oakwood ceased doing business, on April 13, 2004, Oakwood directed U.S. Fire to cancel all outstanding bonds that had been issued for Oakwood. Pursuant to various state law provisions, U.S. Fire continues to have exposure with respect to some of the bonds.

On November 13, 2004, the OHC Trust filed its complaint against U.S. Fire alleging that U.S. Fire was holding funds far in excess of funds needed by U.S. Fire to satisfy outstanding bond obligations. U.S. Fire had obtained these funds by drawing down two letters of credit posted by Oakwood. Specifically, the complaint alleges that U.S. Fire was holding funds totaling $8 million, whereas U.S. Fire's exposure on the outstanding bonds was only a small fraction of that number. OHC Trust seeks a return of the excess funds. During the course of this litigation the parties have engaged in substantial discovery activity and motion practice.

On November 6, 2007, OHC Trust filed a motion for summary judgment. Shortly after OHC Trust filed its motion for summary judgment, U.S. Fire remitted $3.5 million of the collateral to OHC Trust. The parties are in serious dispute as to the amount of collateral still being held by U.S. Fire and the amount of exposure that U.S. Fire still has on outstanding bonds. The parties have served a number of supplemental briefs addressing these disputes.

In accounting for the amount of the collateral still held by U.S. Fire, U.S. Fire recently advised OHC Trust that approximately $500,000 of the collateral had been used to reimburse U.S. Fire for legal fees incurred in defending this action. U.S. Fire contends that the Agreement requires OHC Trust to indemnify U.S. Fire for its attorneys' fees incurred in defending OHC Trust's complaint. OHC Trust argues that the Agreement does not so provide.

The Agreement includes a section indemnifying U.S. Fire for expenses, including attorneys' fees, incurred in connection with its role as surety. The exact language of that section reads:

> Indemnitors ... promise ... [t]o indemnify, exonerate, and otherwise hold [U.S. Fire] harmless from and against any and all loss and expense of whatever kind, including interest, court costs and counsel fees, as well as any such expense incurred or sustained by reason of having issued any Bond and/or having made any investigation in connection with any claim or demand on any Bond. which it may incur or sustain as a result of or in connection with (a) furnishing of and Bond, or (b) the enforcement of this Agreement.

(Doc. # 111, Exhibit A, p. 1.)

The governing law for the Agreement is the State of New York. (*Id.* at ¶ 17.)

This opinion addresses only the legal fees dispute, not the broader summary judgment motion that is still pending.[1]

The relevant facts here are not in dispute. This ruling simply involves contract interpretation.

## DISCUSSION

 It is a well-established rule that parties are responsible for paying their own attorneys' fees absent an explicit agreement to the contrary. *See Bourne v. MPL Commc'ns., Inc.,* 751 F.Supp. 55, 57 (S.D.N.Y.1990) ("Under the general rule in New York, attorneys' fees are incidents of litigation and a prevailing party may not collect them from the losing party unless such an award is authorized by agreement between the parties, statute or court rule."). In the case of indemnity agreements, New York courts have stated that indemnity "should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Hooper Assocs., Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 549 N.Y.S.2d 365, 548 N.E.2d 903, 905 (1989). *See also Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 199 (2d. Cir.2003) ("Promises by one party to indemnify the other for attorneys' fees run against the grain of the accepted policy that parties are responsible for their own attorneys' fees."); *Niagara Frontier Transp. Auth. v. Tri–Delta Constr. Corp.,* 107 A.D.2d 450, 487 N.Y.S.2d 428, 431 (N.Y.App.Div.1985) ("The language of an indemnity provision should be construed so as to encompass only that loss and damage which reasonably appear to have been within the intent of the parties. It should not be extended to include damages which are neither expressly within its terms nor of such character that it is reasonable to infer that they were intended to be covered by the contract."). Likewise, when reading indemnity agreements, New York

---

1. Recently, OHC Trust filed a notice of completion of briefing with respect to the summary judgment motion (Doc. # 69). As reflected in my letters of January 16, 2008 (Doc. # 86) and May 16, 2008 (Doc. # 104) and the transcript of the hearing of June 20, 2008 (Doc. # 112), I believe there remains material issues of fact which preclude my finding in favor of the OHC Trust in its summary judgment motion. I suggest that we have a status conference to schedule this matter for a trial on the merits.

courts have noted that even if contract language may seem to allow a broader interpretation, such a reading is inappropriate: "Although the words [in a contract] might 'seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view.' This is particularly true with indemnity contracts." *Hooper Assocs.*, 549 N.Y.S.2d 365, 548 N.E.2d at 905 (quoting *Robertson v. Ongley Elec. Co.*, 146 N.Y. 20, 40 N.E. 390, 391 (1895)).

When it is clear from the language of the agreement and the surrounding circumstances that indemnity was intended, New York courts have awarded attorneys' fees pursuant to the express terms of the indemnity agreement in a variety of circumstances. *See Gen. Accident Ins. Co. of Am. v. Merritt–Meridian Constr. Corp.*, 975 F.Supp. 511 (S.D.N.Y.1997) (construction); *Lori–Kay Golf, Inc. v. Lassner*, 61 N.Y.2d 722, 472 N.Y.S.2d 612, 460 N.E.2d 1097 (N.Y.1983) (receiver of real property); *Maryland Cas. Co. v. Farley*, 11 A.D.2d 756, 201 N.Y.S.2d 970 (N.Y.App.Div.1960) (appeal bond). Also, in the bankruptcy context, the Supreme Court has held that attorneys' fees authorized by prepetition contracts may be awarded even if they are incurred in postpetition litigation. *Travelers Cas. & Surety Co. Of Am. v. Pacific Gas and Electric Co.*, 549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007).

■ Thus, as U.S. Fire asserts, under New York law, indemnity agreements are valid and enforceable, including their provisions regarding attorneys' fees, and may be upheld in bankruptcy proceedings. U.S. Fire also is correct in noting that, as evident by case law, the surety relationship is one that is predominately accompanied by an indemnity agreement that absolves the surety of liability for any expense, including attorneys' fees, incurred in paying out under or investigating any claim against issued bonds or other instruments of suretyship. *See, e.g., Lori–Kay Golf*, 472 N.Y.S.2d 612, 460 N.E.2d at 1098 ("As a general rule a surety is equitably entitled to full indemnity against the consequences of an principal obligor's default. This includes the right to reimbursement for legal fees incurred...."); *First Nat'l Ins. Co. Of America v. Joseph R. Wunderlich, Inc.*, 358 F.Supp.2d 44, 51–52 (N.D.N.Y.2004). In fact, all of the applicable cases U.S. Fire cites deal with sureties attempting to recoup expenses incurred in fulfilling their role as surety.

■ In the instant matter, however, U.S. Fire is seeking attorneys' fees in relation to its dispute with OHC Trust's claim that U.S. Fire is holding funds significantly in excess of the remaining bonds' exposure. This dispute has nothing to do with a payment or incurrence of other expenses in connection with U.S. Fire's role as surety. Under New York case law, unless the Agreement explicitly provides for indemnity, OHC Trust should not be required to pay U.S. Fire's attorneys' fees in defending the instant litigation.

The relevant portion of the Agreement states that U.S. Fire is entitled to indemnification of "in connection with ... the enforcement of this Agreement. To this end Indemnitors promise: ... to deposit with Company, on demand, the amount of any reserve, in U.S. Dollars, against such Loss which Company is required, or deems it prudent to establish, whether or not any payment for such Loss has been made." (Doc. # 111, Ex. A, p. 1.)

I believe that this provision should be read to relate only to expenses incurred in enforcing the Agreement as to Oakwood's promise to deposit funds on demand by U.S. Fire. The Agreement does not, either explicitly or implicitly, provide for indemnity in a dispute over the amount of collateral held by U.S. Fire.

In its reply brief, U.S. Fire sets forth its central position as follows:

> Pursuant to the clear terms of the Indemnity Agreement, U.S. Fire is entitled to reimbursement for the attorneys' fees incurred in this adversary proceeding. The Indemnity Agreement specifically provides, and OHC does not dispute, the following:
>
> (1) that U.S. Fire is entitled to reimbursement for attorneys' fees incurred to enforce its rights under the Indemnity Agreement; and
>
> (2) one of the rights provided by the Indemnity Agreement is the right for U.S. Fire to demand the deposit of collateral by Oakwood.
>
> * * *
>
> U.S. Fire has a right to the collateral under the Indemnity Agreement and OHC has challenged that right. Whether demanding collateral or defending its right to maintain collateral, U.S. Fire is enforcing the terms of the Indemnity Agreement in this adversary proceeding, and, thus, it is entitled to fees.

(Doc. # 144, pp. 2–3)

I do not agree with that analysis. As noted above, the relevant portion of the Agreement states that U.S. Fire is entitled to indemnification "in connection with . . . the enforcement of this Agreement. To this end Indemnitors promise: . . . to deposit with Company, on demand, the amount of any reserve, in U.S. Dollars, against such Loss which Company is required, or deems it prudent to establish, whether or not any payment for such Loss has been made." (Doc. # 111, Ex. A, p. 1.) Some years back, U.S. Fire demanded the deposit of collateral by Oakwood and Oakwood complied with that demand by delivering appropriate letters of credit which U.S. Fire drew down. But the issue of whether U.S. Fire is holding collateral in excess of its exposure on the bonds has nothing to do with a demand for deposit. By remitting to the OHC Trust $3.5 million after OHC Trust filed its summary judgment motion, U.S. Fire has already acknowledged that it was improperly holding excess collateral. Nowhere within the four corners of the Agreement is there any mention of the amount of collateral that can rightfully be held by U.S. Fire. While the Agreement speaks in terms of indemnification "in connection with . . . the enforcement of this Agreement," nowhere in the Agreement is there any mention of U.S. Fire's right to determine or contest the amount of collateral vis-a-vis the exposure on the bonds. The deposit demand provision of the Agreement cannot be stretched to cover an issue not contemplated by the Agreement.

In addition to the legal fees indemnification related to the deposit demand, it is worth noting that the Agreement also contains a specific legal fees indemnification for U.S. Fire when the indemnitors fail to make a payment to U.S. Fire when a demand is made against a bond. In relevant part that provision reads:

> If the Indemnitors receive notice from Company that a Demand has been made against a Bond by the obligee or beneficiary, they will, at least three (3) business days before payment of such Demand is due the Obligee, pay Company the full amount of the Demand, which amount shall not exceed the penal sum of the Bond, as well as all necessary fees. . . . Failure to make payment to Company as herein provided shall cause the Indemnitors to be additionally liable for any and all reasonable costs and expenses, including attorneys' fees, incurred by Company in enforcing this Agreement, together with interest on unpaid amounts due Company.

(Doc. # 111, Ex. A, ¶ 10.)

Thus, the Agreement contains two very specific legal fees indemnification

arising out of an action by U.S. Fire against the indemnitors: one where the indemnitors do not comply with a deposit demand, and the other where the indemnitors do not comply with a payment obligation triggered by a demand on a bond. There is no mention of a legal fees indemnification arising out of a dispute as to the proper amount of collateral to be held by U.S. Fire to satisfy the remaining bond obligations. This situation suggests the application of the contract interpretation maxim of *expressio unius est exclusio alterius*. *Corbin on Contracts* lists *expressio unius est exclusio alterius* as an "additional maxim of interpretation," noting: "If the parties in their contract have specifically named one item or if they have specifically enumerated several items of a larger class, a reasonable inference is that they did not intend to include other, similar items not listed." *Corbin on Contracts* § 24.28 (5th ed.). New York courts have applied this maxim of interpretation to contracts. For example, in *Two Guys from Harrison–N.Y. v. S.F.R. Realty Assocs.*, 63 N.Y.2d 396, 482 N.Y.S.2d 465, 472 N.E.2d 315 (N.Y.1984), the court held that a lease specifying certain alterations that a tenant was permitted to make, "should be read as implicitly prohibiting other alterations." In reaching its decision, the court noted, "guidance is provided by the doctrine of *'inclusio unius est exclusio alterius,'* an applicable maxim when interpreting contracts. Under all the circumstances here, the specification of certain permitted activities ... should be read as implicitly prohibiting other alterations." *Id.* at 404, 482 N.Y.S.2d 465, 472 N.E.2d 315 (internal citation omitted) (emphasis added).

 My conclusion comports with New York court's observation that "[i]t is established that while an indemnitee may recover from his indemnitor attorneys' fees and expenses incurred in defending a *claim* as to which he is indemnified, he may not recover fees and expenses incurred to establish his *right* against the indemnitor...." *Peter Fabrics, Inc. v. Hermes,* 765 F.2d 306, 315 (2d Cir.1985) (citation omitted) (emphasis added). If U.S. Fire and Oakwood wanted to indemnify U.S. Fire for attorneys' fees incurred in connection with all litigation arising out of their business relationships they could have expressed that right. They apparently did not. They certainly did not express it in the Agreement. Because no such language appears in the Agreement, the Agreement cannot be read to require OHC Trust to indemnify U.S. Fire for attorneys' fees incurred in the instant litigation.

## CONCLUSION

For the reasons discussed above, I conclude that the Agreement does not require OHC Trust to indemnify U.S. Fire for attorneys' fees incurred in the instant litigation. U.S. Fire should return the collateral it drew down upon to pay those attorneys' fees.

## ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the Court finds that the Indemnification Agreement does not require Plaintiff to indemnify Defendant for attorneys' fees incurred by Defendant in this adversary proceeding. Defendant shall return the collateral it drew down upon to pay those attorneys' fees.