# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**212**
**CA 11-01364**
PRESENT: SCUDDER, P.J., CENTRA, PERADOTTO, AND LINDLEY, JJ.

---

IN THE MATTER OF THE ARBITRATION BETWEEN
GRANDE' VIE, LLC, GRANDE' VIE REALTY, LLC,
ANTHONY J. MARASCO AND ANTHONY M. DIMARZO,
PETITIONERS-APPELLANTS-RESPONDENTS,

AND                                                                          MEMORANDUM AND ORDER

ESTATE OF MICHAEL PANAGGIO, DECEASED,
RESPONDENT-RESPONDENT-APPELLANT.
(APPEAL NO. 1.)

---

GATES & ADAMS, P.C., ROCHESTER (ANTHONY J. ADAMS, JR., OF COUNSEL),
FOR PETITIONERS-APPELLANTS-RESPONDENTS.

PHILLIPS LYTLE LLP, BUFFALO (ALAN J. BOZER OF COUNSEL), FOR
RESPONDENT-RESPONDENT-APPELLANT.

---

Appeal and cross appeal from a judgment of the Supreme Court, Monroe County (Ann Marie Taddeo, J.), entered April 13, 2011. The judgment, among other things, granted the motion of petitioners to stay arbitration, and denied the motion of respondent to compel arbitration.

It is hereby ORDERED that the judgment so appealed from is reversed on the law without costs, petitioners' motion is denied, and respondent's motion seeking to compel arbitration is granted.

Memorandum: Petitioners Anthony J. Marasco and Anthony M. DiMarzo and Michael Panaggio (decedent), whose estate is the respondent herein, were equal members of petitioners Grande' Vie, LLC and Grande' Vie Realty, LLC. The operating agreements of the companies provided that the purchase price of a deceased member's interests would be paid to his estate. When decedent died in 2008, respondent sought arbitration on the value of decedent's interest in the companies. Petitioners filed a petition to stay arbitration, which was granted. After an appraiser selected by petitioners rendered his written appraisal of the value of decedent's interest in the companies, petitioners moved by order to show cause to confirm the appraisal and to stay arbitration of any issues resolved by that appraisal. Respondent moved for an order compelling arbitration or for alternative relief.

Supreme Court erred in granting petitioners' motion to confirm the appraisal and to stay arbitration, and in denying respondent's

motion to compel arbitration.  The operating agreements had both an appraisal and an arbitration clause, which gives rise to an issue of arbitration (see Matter of Dimson [Elghanayan], 19 NY2d 316, 324).  The arbitration clause provided that all controversies or claims arising out of the operating agreements shall be submitted to arbitration.  Indeed, the arbitration clause also noted that, if the matter submitted to arbitration involved a dispute as to the value of a member's interest, one of the arbitrators shall be a certified public accountant.  The appraisal clause provided that the parties were to notify a certain individual "(the 'Appraiser'), to calculate the Fair Value of the Company.  In the event the Appraiser or its successor in interest is no longer in business then the purchasing member shall notify [another named individual] or if he is no longer in business, any MAI appraiser (the 'Successor Appraiser')."  When the two named individuals in the appraisal clause declined to appraise decedent's interest, petitioners asked an MAI appraiser to value the companies and decedent's interest therein.  The appraisal clause further provided that "[t]he Fair Value of the Membership Interest being purchased shall be determined by the Appraiser, . . . and] the Appraiser's final determination shall be binding on the selling Member and the purchasing Member(s)."

It is well settled that, "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms" (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162).  "Where an agreement is clear and unambiguous, a court is not free to alter it and impose its personal notions of fairness" (Welsbach Elec. Corp. v MasTec N. Am., Inc., 7 NY3d 624, 629).  By the plain wording of the appraisal clause, the MAI appraiser was the "Successor Appraiser," but only the "Appraiser's" determination would be final and binding on the parties.  We therefore conclude that the parties intended that, where the "Appraiser" was not available to value the companies and the member's interest, the matter should be submitted to arbitration (cf. Dimson, 19 NY2d at 323).  In light of our determination, we do not address the remaining contentions of the parties.

All concur except LINDLEY, J., who dissents and votes to modify in accordance with the following Memorandum:  I respectfully dissent.  In my view, Supreme Court properly determined that respondent is bound by the appraisal submitted by the Member Appraisal Institute (MAI) appraiser selected by petitioners to calculate the value of decedent's membership interest.  I cannot agree with respondent's contention, raised for the first time on appeal, that the appraisal clause of the operating agreements clearly and unambiguously provides that the only appraisal that shall be binding is that offered by Richard Bellows, who declined to prepare an appraisal.  The appraisal clause reads: "For purposes of this Agreement, within ten (10) days after the expiration of the thirty (30) day period set forth in Section 8.2 (a) (ii) above, the selling Member (either the selling Member or the legal representative of the Deceased Member, as the case may be) and the purchasing Members shall notify Richard Bellows, (the 'Appraiser'), to calculate the Fair Value of the Company.  In the event the Appraiser or its successor in interest is no longer in business then the

purchasing member shall notify Bob Pogel or if he is no longer in business, any MAI appraiser (the 'Successor Appraiser'). The Fair Value of the Membership Interest being purchased shall be determined by the Appraiser, in accordance with such valuation techniques and appropriate methodologies as the Appraiser deems appropriate, all in accordance with Generally Accepted Accounting Principles, and the policies and rules of MAI (Member Appraisal Institute). In all cases, the Appraiser's final determination shall be binding on the selling Member and the purchasing Member(s). The Appraiser shall deliver a written report of its determination of Fair Value to all interested parties, and the cost of such appraisal shall be borne equally Fifty percent (50%) by said selling Member and Fifty Percent (50%) by the Purchasing Member(s)."

As illustrated above, the instructions as to how the Fair Value of the Membership Interest is to be determined refers only to the Appraiser, as does the provision directing that a written report of the appraisal be delivered to all interested parties. Thus, if the appraisal clause is interpreted as respondent suggests (so as to distinguish between the Appraiser and the Successor Appraiser), the Successor Appraiser would play no role in the appraisal process upon being "notif[ied]" by the purchasing member. In other words, to construe the appraisal clause as giving binding effect to an appraisal submitted by *only* Bellows would render meaningless the provisions for selecting another appraiser in the event that Bellows declines to perform an appraisal. That construction of the appraisal clause is contrary to the well-established rule that courts should "avoid an interpretation that would leave contractual clauses meaningless" (*Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc.*, 63 NY2d 396, 403). As the Court of Appeals has advised, "[i]t is a cardinal rule of construction that a court should not adopt an interpretation which will operate to leave a provision of a contract . . . without force and effect" (*Corhill Corp. v S.D. Plants, Inc.*, 9 NY2d 595, 599 [internal quotation marks omitted]; *see Muzak Corp. v Hotel Taft Corp.*, 1 NY2d 42, 46-47).

Although not dispositive, it is worth noting that both petitioners and respondent apparently proceeded with the understanding that an appraisal submitted by an MAI appraiser, i.e., a Successor Appraiser, would be binding, and that may explain why respondent did not contend otherwise in Supreme Court. After Bellows and Bob Pogel declined to perform an appraisal, the parties, in an attempt to reach a settlement, selected Midtown Valuation Group, LLC (Midtown) to perform a nonbinding appraisal. Midtown prepared an appraisal, but the parties still could not agree on the value of decedent's membership interest. Petitioners therefore selected a Successor Appraiser, in accordance with the appraisal clause. If, as respondent contends, the appraisal from the Successor Appraiser is not binding, there was no need for the parties to select Midtown to prepare a nonbinding appraisal for settlement purposes.

It is true, as respondent points out, that the operating agreements also contain a general arbitration clause. It provides that any "controversy or claim arising out of or relating to" the

agreements shall be submitted to arbitration and that, "if the matter submitted to arbitration shall involve a dispute as to the value of a Membership Interest, one of the arbitrators shall be a certified public accountant and shall have no prior affiliation with any Member or the Company."  Contrary to respondent's contention, however, the arbitration clause does not compel a finding that the parties' dispute over the value of decedent's membership interest must be arbitrated. As a preliminary matter, I note that respondent's contention with respect to the arbitration clause applies with equal force to an appraisal submitted by the Appraiser, which respondent concedes would be binding.  In any event, the presence of both the appraisal clause and the arbitration clause gives rise to an issue of arbitrability, which was properly resolved by the court (*see United Steelworkers of Am. v American Mfg. Co.*, 363 US 564, 570-571 ["(S)ince arbitration is a creature of contract, a court must always inquire . . . whether the parties have agreed to arbitrate the particular dispute"]; *Matter of Dimson [Elghanayan]*, 19 NY2d 316, 324).  In my view, the provision of the appraisal clause directing the Appraiser or Successor Appraiser definitively to determine the value of a membership interest removed that subject from the purview of the arbitrator (*see Dimson*, 19 NY2d at 325).

In addition, it is a well-settled proposition that, "[w]here a contract . . . employs contradictory language, specific provisions control over general provisions" (*Green Harbour Homeowners' Assn., Inc. v G.H. Dev. & Constr., Inc.*, 14 AD3d 963, 965; *see Muzak Corp.*, 1 NY2d at 46).  Here, the appraisal clause is far more specific than the arbitration clause, which is contained in a section of the agreements merely entitled "General Provisions."  There is thus no merit to respondent's contention that the dispute over the value of decedent's membership must be arbitrated.  Having reviewed respondent's remaining challenges to the court's confirmation of the appraisal submitted by the Successor Appraiser and the court's staying of arbitration on the issue of the purchase price, I conclude that those challenges similarly are without merit.

Finally, I conclude that the court erred in awarding interest to respondent on the entire amount of the purchase price.  In my view, interest should be awarded only on the 10% down payment and any monthly payments that accrued as of the closing date, March 7, 2011 (*see* CPLR 5001 [a]).  I would therefore modify the judgment only with respect to the amount of the award of interest.

Entered:  March 23, 2012                    Frances E. Cafarell
                                            Clerk of the Court